[L. A. No. 4359. In Bank.—June 7, 1916.]

## CORONADO BEACH COMPANY (a Corporation), et al., Petitioners, v. A. J. PILLSBURY et al., as Members of and Constituting the Industrial Accident Commission of the State of California, Respondents.

WORKMEN'S COMPENSATION ACT—COMPENSABLE ACCIDENTS.—The Workmen's Compensation Act, section 12 (a) (Stats. 1913, p. 283), imposes liability for compensation only for accidents arising out of and in the course of the employment of the person injured.

ID.—FALL OF EMPLOYEE DOWN FLIGHT OF STAIRS—ATTEMPT TO TICKLE BY COEMPLOYEE.—The fall of an employee down a flight of stairs while engaged in the course of his employment, occasioned by the playful act of a coemployee in thrusting a newspaper in his ribs with intent to tickle him, is not an accident "arising out of" his employment, within the meaning of the Workmen's Compensation Act, and injuries resulting therefrom are not compensable.

ID. — MOMENTARY ACT WITHOUT MALICE. — That the act of the coemployee was but momentary and without malice, and not in excess of the usual intercourse between servants, is immaterial.

ID.—ACCIDENTS WHEN ARISE OUT OF EMPLOYMENT.—The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work, or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment. It "arises out of" the occupation where there is a causal connection between the conditions under which the servant works and the resulting injury. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Gavin McNab, and Oliver B. Wyman, for Petitioners.

Christopher M. Bradley, for Respondents.

MELVIN, J.—*Certiorari* to review the action of the Industrial Accident Commission in awarding benefits to Harry Flint, an employee of petitioner, Coronado Beach Company. The other petitioner, Frankfort General Insurance Company, is interested, because it has issued a policy of insurance to Coronado Beach Company covering industrial accidents to the servants of that corporation.

The facts are briefly set forth in the following quotation from the opinion of the Industrial Accident Commission:

"On the thirteenth day of October, 1914, Harry Flint, an employee of the Coronado Beach Company, San Diego County, California, was injured by accident and the manner of his injury was as follows:

"He was known by his associates to be peculiarly susceptible of being tickled, and, as he was going down a flight of stairs with a filled bucket in his hand, one of his associates, in passing by, punched him in the back with a newspaper, which caused applicant to make a sudden movement and to fall, injuring one knee quite seriously. He demanded compensation for his injury, which demand was refused on the ground that his injury did not arise out of the employment in which he was engaged at the time but was the result of 'skylarking.'" In the same opinion it was admitted that as a general rule compensation is not awarded when injury results from friendly bouts or scuffling where the participants leave their work for the purpose of the contest, but the commissioners sought to differentiate this from cases arising out of such mutual play. The opinion contains this language: "It is inevitable that where human beings are associated together there will be a certain amount of departure from the work in hand, and certain thoughtless acts of employees, not at all evilly disposed, will result in injury. We think that, up to a certain standard, such risks may properly be regarded as risks of the occupation and a proper charge against the industry. In this case the injured man did not depart from his duties to engage in any scuffling with the person who punched him in the back with a newspaper. It was a mere passing pleasantry, such as slapping an acquaintance on the shoulder with the hand, and such an act as is probably incident in all employments where a number of employees are brought into contact. We think this in-

cident distinguishable from intentional playing of practical jokes where some possibility of injury is present. It is only when such physical contact exceeds the limits of normal association of human beings that the act may be regarded as skylarking and therefore outside of the course of employment.''

Petitioner contends that the Industrial Accident Commission was without power to make an award, for the reason that the accident did not arise out of the employment. Section 12 (a) of the compensation act (Stats. 1913, p. 283) contains the following language:

''Liability for the compensation provided by this act, in lieu of any other liability whatsoever, shall, without regard to negligence, exist against an employer for any personal injury sustained by his employees by accident arising out of and in the course of the employment.''

In the proceeding before the accident commission upon petition for a rehearing, amended findings were filed. These contain the following language: ''That at the time of said accident the applicant was carrying a bucket of rubbish down said flight of stairs in the course of his employment, and was not in any way neglecting or departing from his duties or joining in any conversation, jostling, or scuffling with fellow-employees, but was in all ways attending strictly to the duties of his employment; that while so descending the stairs a fellow-employee in passing casually thrust a newspaper against the ribs of the said applicant with intent to tickle him but without malice or ill will or intent to cause any harm; that the act of the fellow-employee in thrusting said newspaper against the ribs of the applicant was but a momentary act in passing and not in excess of usual intercourse customary between employees while at work, and was not of sufficient seriousness to amount to practical joking or horseplay; that serious injury was not reasonably to be anticipated from such act, but that by mischance the applicant lost his balance and slid face downward five steps to the foot of the stairs.''

It will be noticed from a reading of the statute quoted above that the liability for compensation accrues only for accidents arising out of and in the course of the employment of the person injured. That Flint was in the course of his employment at the time there can be no doubt, but it is

equally clear that the accident did not arise out of his employment. That the act of his fellow-servant was but momentary and without malice and not in excess of the usual intercourse between servants makes no difference. Suppose the fellow-employee had tripped him up, intentionally but playfully, would anyone contend that the employer was liable because his servants (perhaps entirely without his knowledge) had established a custom of tripping one another? We cannot see how this assault differed from any other. Flint was hyper-aesthetic, in that he was peculiarly sensitive to tickling. This was known to his associates. His fellow-servant, who tickled him as he was going down a stairway carrying a bucket in his hand, may have been an amiable person who merely intended a bit of rough play, but, unless he was an idiot, he must have seen that such a prank was attended with some danger. If his sense of proportion had been even more distorted and he had pushed Flint down the stairs in the joyous hope of seeing the latter sprawl humorously on the floor below, no one would contend that the accident occurred in the course of the employment of the injured man. We cannot see that it is our duty to measure the dynamics of assaults and to hold that the master must be charged with foreseeing and insuring against those which are playfully intended and which may be sanctioned by a custom existing among his servants. The accidents arising out of the employment of the person injured are those in which it is possible to trace the injury to the nature of the employee's work or to the risks to which the employer's business exposes the employee. The accident must be one resulting from a risk reasonably incident to the employment. (*Fitzgerald* v. *Clarke & Son* [1908], 2 K. B. 796; 77 L. J. K. B. 1018.) It "arises out of" the occupation when there is a causal connection between the conditions under which the servant works and the resulting injury. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. (*McNicol's Case,* 215 Mass. 497, 499, [L. R. A. 1916A, 306, 102 N. E. 697].) In the case last cited the court held that the employer was liable on the ground that the workman was killed by a fellow-servant who was in "an intoxicated frenzy and passion," and who was "in the habit

of drinking to intoxication, and when intoxicated was quarrelsome and dangerous, and unsafe to be permitted to work with his fellow-employees, all of which was known to the superintendent, Matthews.'' It was held that a natural result of the employment of a peaceable workman with a quarrelsome drunkard would be an attack by the latter upon the former. But in the declaration of the rule applicable to cases in which the question to be determined is whether or not the injury arose out of the employment, the court made an interesting and instructive review of some of the leading cases which will be of value to us in this discussion. Speaking of the rulings in England on the industrial accident statutes, the court said: ''It there had been held that injuries received from lightning on a high and unusually exposed scaffold (*Andrew* v. *Failsworth Industrial Soc.* [1904], 2 K. B. 32) ; from the bite of a cat habitually kept in the place of employment (*Rowland* v. *Wright* [1909], 1 K. B. 963) ; from a stone thrown by a boy from the top of a bridge at a locomotive passing underneath (*Challis* v. *London & Southwestern Ry.* [1905], 2 K. B. 154) ; and from an attack upon a cashier traveling with a large sum of money (*Nisbet* v. *Rayne & Burn* [1910], 2 K. B. 689), all arose in the course and out of the employment, while the contrary had been held as to injuries resulting from a piece of iron thrown in anger by a boy in the same service (*Armitage* v. *Lancashire & Yorkshire Ry.* [1902], 2 K. B. 178) ; from fright at the incursion of an insect into the room (*Craske* v. *Wigan* [1909], 2 K. B. 635) ; and from a felonious assault of the employer (*Blake* v. *Head*, 106 L. T. Rep. 822).'' Later in the opinion this language was used: ''A fall from a quay by a sailor while returning from shore leave (*Kitchenham* v. *Owners of S. S. Johannesburg* [1911], 1 K. B. 523; s. c. [1911], App. Cas. 417) ; a sting from a wasp (*Amys* v. *Barton* [1912], 1 K. B. 40) ; and a frost bite (*Warner* v. *Couchman* [1912], App. Cas. 35), all have been held to be injuries not 'arising out of' the employment.'' These citations aptly illustrate the rule that those injuries only are compensable which result from risk reasonably incident to the employment.

The Committee of Arbitration of the Massachusetts Industrial Accident Board passed upon a matter involving almost identically the same state of facts as those here considered. We quote from the decision of the committee as follows:

" 'The committee finds that the employee was at work for his employer when another employee tickled him. He is very ticklish and the act of the other employee was the cause of the injury. The employee himself was not at fault at all and did not grapple with the other man or fool with him. But the committee finds that the accident did not arise out of the employment, and the employee is not entitled to recover. The representative of the employee dissents.' " (*Clark* v. *Terry & London & Lancashire Guarantee & Accident Co.*, decided by the Massachusetts Industrial Accident Board February 10, 1915, and quoted in the opinion of the Industrial Accident Commission of California in the proceeding we are now considering.) The learned Industrial Accident Commission has held that a foreman injured by another employee who in anger struck him was not entitled to compensation, where it appeared that the assault was entirely unprovoked, and that it was not due to any previous altercation between the assailant and the person injured, or to any attempt on the part of the foreman to enforce any instructions or orders. (*Petersen* v. *Valley Pipe Line,* vol. 2, p. 606, advance sheet No. 8, Industrial Accident Commission Decisions.) It was held that the employment of the foreman "did not expose him to risk of such assault to any greater extent than the risk of any by-stander not so employed of being assaulted in the same manner." This conclusion from the facts found was logical and proper. In the matter at bar the employment of Flint exposed him to no greater danger from being tickled by a fellow-servant than would a guest in the hotel of his employer have been so exposed. The two cases are quite similar, except that Flint's assailant used less force and greater good humor in his unwarranted interference with his fellow-servant than did the man who hit Petersen.

The supreme court of New Jersey took the same view as that adopted by the Industrial Accident Commission of California in a case somewhat similar to this. The accident arose out of a playful attempt on the part of a workman to strike or to knock off the hat of a coworker who was passing. The man dodged, slipped on the floor, and sustained injuries from which he died. It was held that the attack made upon decedent was not so disconnected from his employment as to take it out of the class of risks reasonably incident to the employment of labor. (*Hulley* v. *Moosbrugger,* 87 N. J. L.

103. [93 Atl. 79].)    On appeal the judgment was reversed by
the court of errors and appeals. (*Hulley* v. *Moosbrugger*
(N. J.), 95 Atl. 1007.)    The opinion is by Chancellor Walker,
who reviews and quotes at length from the English and other
decisions.    It was held immaterial whether or not Hulley
took part in or instigated the ''larking'' which resulted in
the accident.    Among other things, the learned chancellor ,
said:

''In the case at bar the employer was not charged with the
duty to see to it that none of his employees assaulted any
other one of them, either willfully or sportively.    And when
one made such an assault upon another he was guilty of the
doing of a negligent act as an individual tort-feasor, for
which his employer was not responsible. . . .

''We are of opinion that an employer is not liable, under
the Workmen's Compensation Act, . . . to make compensa-
tion for injury to an employee, which was the result of horse-
play or skylarking, so called, whether the injured or deceased
party instigated the occurrence or took no part in it; for,
while an accident, happening in such circumstances, may
arise in the course of it, it cannot be said to arise out of the
employment.''

Counsel for the respondents cites the case of *Challis* v. *Lon-
don & Southwestern Ry.* [1905], 2 K. B. 154, as strongly
supporting the views of the commission.    In that case a lo-
comotive engineer was hit by a stone thrown by a small boy.
It was held that the accident arose out of, and in the course of,
the employment, because it is a matter of common knowledge
that trains in motion have a great attraction for mischievous
boys as objects at which to discharge missiles.    We need not
discuss at length this doctrine which seems to be somewhat an-
alogous to the rule in the ''turntable cases,'' because it rests
fundamentally upon the known tendencies of nonage and not
upon the custom of playful adults.

In *Hillis* v. *Shaw*, Workmen's Compensation Reports
(1913), the facts disclosed an accidental shooting of a domes-
tic servant by a farm laborer, who pointed a gun at her prob-
ably in jest.    It was held that the injury did not result from
an accident arising out of the woman's employment.

In *Wilson* v. *Laing*, 46 S. L. R., 2 Butterworth's Cases,
118, the court was considering an appeal from an award at
the sheriff court at Edinburgh.    The appellant was a house-

maid employed by respondent. A fellow-servant, a nurse-maid, playfully threw at the housemaid a toy India rubber air-ball, striking her in the eye and inflicting serious injury. The sheriff was upheld in his refusal to award compensation. One sentence in the opinion of the lord justice-clerk is worthy of particular attention. It is as follows: "It is a very far-fetched idea that because this happened in a house where there were children and children's toys, therefore the risk of accidents happening through a toy being thrown by one servant at another was one of the risks incident to the appellant's employment."

In Willis' Workmen's Compensation (1914), pages 23 and 24, the learned author states the rule as follows:

"It is not within the scope of employment of workmen, whether boys or men, to indulge in horse-play, and injury thereby sustained by a workman, even though he is not a party to the larking, is not an injury by accident arising either in the course of or out of the employment." (Citing *Armitage* v. *Lancashire etc. Ry. Co.,* [1902] 2 K. B. 178, 4 W. C. C. 5.)

The most recent authority on this subject is *Federal Rubber Co.* v. *Havolic* (Wis.), 156 N. W. 143.

We are of the opinion that upon reason and upon the overwhelming weight of authority we must hold that the decision of the Industrial Accident Commission in the matter of the application of Flint was erroneous. The accident did not arise "out of" the employment, and the servant, therefore, is not entitled to recover compensation.

The award is annulled.

Henshaw, J., Shaw, J., Lorigan, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.