GLENN *v*. REYNOLDS SPRING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENT MUST ARISE OUT OF EMPLOYMENT.

To justify an award under the workmen's compensation act, the accident must have arisen out of, as well as in the course of, the employment.

2. SAME—EMPLOYER'S KNOWLEDGE OF "HORSEPLAY" BY EMPLOYEES RENDERS IT LIABLE FOR ACCIDENT CAUSED THEREBY.

Where a sweeper in a factory was fatally injured by an electric shock when he took hold of the handles of his wheelbarrow which had been connected with a live electric wire by fellow employees in a spirit of fun, a showing that pranks of this nature were known to the employer, *held*, to justify a finding by the department of labor and industry that the accident arose out of and in the course of the employment.

3. SAME—DUTY TO STOP "HORSEPLAY" CANNOT BE DELEGATED SO AS TO RELIEVE FROM LIABILITY.

The duty of an employer to put a stop to the practice of its employees of playing jokes on fellow employees with live electric wires could not be delegated to another so as to relieve it from liability for nonperformance.

4. SAME—KNOWLEDGE OF STRAW BOSS NOTICE TO EMPLOYER.

Where the duty to put a stop to the practice of employees of playing jokes on fellow employees with live electric wires or report it to his superior officer was imposed on a straw boss by his employer, his knowledge of the practice was notice to the employer.

FELLOWS and WIEST, JJ., dissenting.

Certiorari to Department of Labor and Industry. Submitted October 17, 1923.     (Docket No. 98.) Decided January 7, 1924.

Freda Glenn and others presented their claim for

On injuries caused by horseplay as injuries arising out of and in the course of employment, see note in L. R. A. 1918E, 504.

On right to compensation under workmen's compensation act in case of injuries sustained through horseplay or fooling, see notes in 13 A. L. R. 540; 20 A. L. R. 882.

On notice of injury within meaning of workmen's compensation acts, see notes in L. R. A. 1916A, 83, 244; L. R. A. 1917D, 135; L. R. A. 1918E, 556.

compensation against the Reynolds Spring Company
for the accidental death of their decedent in defend-
ants' employ.    From an order awarding compensa-
tion, defendant and the General Accident, Fire &
Life Assurance Corporation, Ltd., insurer, bring
certiorari.    Affirmed.

*Kerr, Lacey & Scroggie,* for appellants.

*Elmer Kirkby* and *M. Grove Hatch,* for appellees.

SHARPE, J.    The defendant Reynolds Spring Com-
pany installed a department for the manufacture of
radio outfits in its plant in the city of Jackson in
1922.    Electric wires for testing purposes were
dropped from the ceiling.    Claimants' decedent, Ross
Glenn, was employed there as a sweeper, collecting
the refuse and dirt with a wheelbarrow.    At the
noon hour on January 24, 1923, some of his fellow
employees connected the live electric wires with the
handles of the wheelbarrow and when Glenn, resum-
ing his work, took hold of the handles he received a
shock which caused his death.    There was no intent
to injure him, simply "to play a joke on him."    The
voltage was not thought to be sufficient to cause in-
jury.    The two men who attached the wires pleaded
guilty to manslaughter in the circuit court.    Defend-
ants here review on certiorari an award of compen-
sation made to the plaintiffs by the deputy commis-
sioner and affirmed by the board.    It is their claim
that the accident causing death did not arise out of
his employment.    It is well settled in this State that
to justify an award under our act the accident must
have arisen, not only in the course of employment, but
*out of the employment.    Sichterman* v. *Kent Storage
Co.,* 217 Mich. 364 (20 A. L. R. 309).    That deceased
met his death while in the course of his employment
there can be no doubt.    Did the accident arise out of
his employment?    Counsel for the defendants insist
that the holding in *Tarpper* v. *Weston-Mott Co.,* 200

Mich. 275 (L. R. A. 1918E, 507), is decisive of the question. In that case the deceased was engaged as "helper to a riveter." "It was his duty to put the rivets in the holes," and hold them steady "while the riveter applied a hammer operated by compressed air to the rivets and so finished the job." His duty did not bring him in contact with the compressed air system or hose. A fellow workman placed a piece of the hose against the side of Tarpper and in his moving around it "slipped down until it got against his rectum." While so held, the air was turned on, the rectum was ruptured and Tarpper seriously injured. This was done in a spirit of fun, and without intent to injure. In reversing the award, this court quoted approvingly from *Federal Rubber Manfg. Co.* v. *Havolic,* 162 Wis. 341 (156 N. W. 143, L. R. A. 1916D, 968), as follows:

"How injuries resulting from such inexcusable and revolting horseplay as this can be said to be incidental to the employment we are unable to understand. It is equally impossible to understand how it can be said that the claimant at the time of the accident was performing service 'growing out of and incidental to his employment.' "

The opinion in that case was carefully considered, concurred in by all the Justices, and, while there is authority holding otherwise, we feel constrained to adhere to it. It was cited with approval in *Payne* v. *Industrial Commission,* 295 Ill. 388 (129 N. E. 122, 13 A. L. R. 518). See, also, *Hollenbach Co.* v. *Hollenbach,* 13 A. L. R. 524 (181 Ky. 262, 204 S. W. 152), and note thereto.

There are, however, facts in this case, not there appearing, which, it is claimed, sustain the award made. The board found:

"We think the testimony establishes conclusively that pranks of various kinds, especially those involving the use of electricity, had been prevalent in the

radio department for a long time. It also establishes that Irons was the person in charge of this department, and that he was an instigator of pranks and had knowledge of them."

There is evidence to support this finding. Earl Brimble, a fellow employee, testified that Irons "knew about these jokes being played," and at times participated in them. There was other testimony of similar import. John J. Gilbert, superintendent of the plant in which Glenn was working, testified that Irons was at the time "straw boss;" that "his knowledge of radio parts, which takes time to learn, put him in a position as straw boss to see they got the parts assembled correctly;" that he was "sort of a lieutenant to carry out" his orders. In answer to a question as to why he did not discharge Irons after the accident, he said:

"Because I knew this man's knowledge of this accident has been a bit of experience to him and if I fired him I would have to have somebody else there, and I knew * * * he would not permit that to occur again if he knew it."

From this it appears that Irons had the authority to stop such "horseplay." He was not sworn as a witness. The deceased was without fault. As an employee he had the right to expect that no unusual conditions, known to his employer and suffered by him to exist, surrounded his employment, rendering it more hazardous than was apparent to the ordinary observer. If such conditions did exist, and there was a causal connection between the work he was required to perform under them and the injury received, such injury may be said to have arisen out of his employment. If Mr. Irons knew that such "jokes" with the electric wires were being "played" on workmen in this room, and his position was such that notice or knowledge to him was notice or knowledge to the employer (a question later considered), it must be held that the danger to the deceased incident thereto, of which he

had no knowledge, was a risk so connected with his employment that the accident resulting therefrom arose out of the employment. In *Hopkins* v. *Michigan Sugar Co.,* 184 Mich. 87 (L. R. A. 1916A, 310), Mr. Justice STEERE quoted with approval the following from *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306) :

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment."

In *Socha* v. *Cudahy Packing Co.,* 105 Neb. 691 (181 N. W. 706, 13 A. L. R. 513), a similar question was considered. The court said:

"The very fact that injuries of this nature, resulting from the sportive use of compressed air under like circumstances, have been before the courts in a number of cases is worthy of note. Such a combination of elements seems to present a situation attractive and suggestive to a youthful, or to a rude and untutored, mind having no knowledge of the serious or fatal consequences liable to result. This combination of elements may arise out of the nature of the occupation. The liability to perform such acts by the employees was known to the employer, since, as we have seen, warning notices in a language foreign to that of the workmen had been placed upon the bulletin board; and the fact that the men had previously played with the air hose, but not in this manner, was known to the foreman, Schultze, Socha's immediate superior. Though negligence is not a necessary element in an

award under the act, such knowledge affords light upon the question whether the injury may reasonably be said to arise out of the employment. If a person familiar with the whole situation could reasonably contemplate that such an accident might result from the peculiar nature and circumstances of the employment, and the nature of the place where the injured man was required to work, then it may reasonably be said to arise out of it. The principles quoted from the *McNicol's Case* seem to us to be sound.

"We are of the opinion that, under all the facts, such a happening might reasonably have been foreseen, and, in fact, was anticipated by the employer in this case, and that the accident arose out of the employment."

See, also, *In re Loper*, 64 Ind. App. 571 (116 N. E. 324); *White* v. *Stock Yards Co.*, 104 Kan. 90 (177 Pac. 522); *Stuart* v. *Kansas City*, 102 Kan. 307 (171 Pac. 913); *State, ex rel. Johnson Sash & Door Co.*, v. *District Court*, 140 Minn. 75 (167 N. W. 283, L. R. A. 1918E, 502); *Clayton* v. *Hardwick Colliery Co.*, 85 L. J. K. B. (N. S.) 292, 114 L. T. 241, 32 Times L. R. 159, 60 Sol. Jo. 138, 9 B. W. C. C. 136.

That Irons had notice of and knowledge that these wires were being used for perpetrating "jokes" on the employees, is well established. That it was the duty of the employer to put a stop to this practice, if known to its officials, cannot be doubted. This duty could not be delegated to another so as to relieve the company from liability for its nonperformance. Irons was employed to oversee the work in this department. While he did not hire or discharge the workmen, it was clearly his duty to order the men indulging in such pranks to cease doing so, and, if they did not, to report such fact to his superior officer. The rank or grade of his employment is not the test. The question is, Did the company impose on him the performance of a duty in this respect which it owed to the men there employed? *Beesley* v. *F. W. Wheeler*

*& Co.,* 103 Mich. 196, 203 (27 L. R. A. 266) ; *Wellihan* v. *National Wheel Co.,* 128 Mich. 1.     The testimony of Mr. Gilbert, the superintendent, shows clearly that he expected Irons to perform this duty.     Notice to him that such practices were being indulged in was therefore notice to his employer.     The relationship of the person to the employer in respect to notice of this kind is clearly distinguishable from that relating to notice of the accident required to be given by section 15 of part 2 of the act (2 Comp. Laws 1915, § 5445).

In *Marshall* v. *Baker-Vawter Co.,* 206 Mich. 466, the claimant, a foreman, was injured while at work by a vicious employee.     One of the issues there presented was whether the fact that his assailant was "a quarrelsome and dangerous fellow" was known to the employer.     The finding of the board against the claimant was affirmed.     There is, however, a clear intimation that, had the finding of fact been otherwise, the plaintiff would have been entitled to compensation. In *Little* v. *Atlas Drop Forge Co.,* 221 Mich. 604, the injury was inflicted by a fellow employee.     No claim was there made that he was a "dangerous fellow" or that his employer had knowledge of such fact.

The conclusion here reached rests solely on the findings of the board:    (1) that deceased was injured while in the performance of his usual work; (2) that he was subjected to an unusual hazard while at such work by reason of the use to which the electric wires were put; (3) that such hazard was unknown to him, but known to his employer; (4) that there was such a causal connection between the conditions under which his work was required to be performed and the injury received as justified the finding that it arose out of his employment.

The award is affirmed.

CLARK, C. J., and McDONALD, BIRD, MOORE, and STEERE, JJ., concurred with SHARPE, J.

FELLOWS, J. (*dissenting*).    I am unable to distinguish the instant case upon principle from the case of *Tarpper* v. *Weston-Mott Co.*, 200 Mich. 275 (L. R. A. 1918E, 507).    Indeed, counsel for plaintiffs say in their brief:

"We are, however, confronted by the decision of this court in the *Tarpper Case* above referred to, and as we take it, according to that case, that injuries received as a result of sportive acts, horseplay or jokes do not arise out of the employment, nevertheless we wish to state, with all due deference to the court, that we think the reasoning of the *Tarpper Case* is incorrect."

In that case, as in this, the unfortunate accident resulted solely from horseplay of co-employees who, leaving their employment, engaged for the time-being in what to them was supposed to be a harmless "larking."    They were then performing no duty to their employer and I do not think their employer should be held liable for the injury they inflicted which resulted so disastrously.

But it is thought that that case is not applicable because the "straw boss," Irons, had knowledge that the employees had engaged in horseplay and had participated in it.    This straw boss had no authority to hire or discharge employees.    He was not the *alter ego* of the master and notice to him was not notice to the master.    But if we should pass all this, I am still unable to see a distinction between an injury caused by a co-employee with a sportive disposition and one caused by a co-employee with a malicious disposition unless the distinction be favorable to the former. This court has considered two cases involving an injury caused by a co-employee possessed of a malicious disposition.    *Marshall* v. *Baker-Vawter Co.*, 206 Mich. 466; *Little* v. *Atlas Drop Forge Co.*, 221 Mich. 604. In the *Marshall Case*, Mr. Justice BIRD, after citing a large number of cases, stated this conclusion:

"An examination of these authorities does not disclose any material disagreement over the test which should be applied.     Some of them are close cases—near the line, as is the present case.     In all, or nearly all of them, the same test is applied, namely, whether the attack grew out of the employment—out of the work, or was one of personal vengeance,"

and then quoted with approval the language of the court in *Jacquemin* v. *Manufacturing Co.,* 92 Conn. 382 (103 Atl. 115, L. R. A. 1918E, 496).

In the *Little Case* the employee was angered because of directions given him by Little with reference to some material.     Mr. Justice McDONALD, who wrote for the court, there quoted from Justice BIRD'S opinion in the *Marshall Case* and from the Connecticut case, and in conclusion said:

"Apparently the sole reason for the assault was his resentment because of the directions which Little gave and which it was his duty to give.     It grew out of the work which plaintiff was required to do in the course of his employment.     No other reasonable inference can be drawn from the undisputed facts.     On these facts the board was correct in its determination that the injuries to plaintiff arose out of and in the course of his employment."

I think it is obvious that if the employer is not liable under the workmen's compensation act for an injury inflicted by a quarrelsome employee, known by him to be such, unless such injury grew out of the work, that he is not liable under the workmen's compensation act for an injury inflicted by a sportive employee known by him to be such, unless such injury also grew out of the work.

If we follow either the *Tarpper Case* or the *Marshall* and *Little Cases,* I do not see how we can affirm this award.

I think it should be reversed.

WIEST, J., concurred with FELLOWS, J.