## FURSMAN COAL CO. v. STATE INDUSTRIAL COMMISSION et al.

No. 15120—Opinion Filed Jan. 2, 1925.

### 1. Master and Servant—Workmen's Compensation Law—Permanent Partial Disability.

A permanent partial disability resulting from injury to the spine is subject to compensation under the last paragraph of subdivision No. 3, section 7290, Comp. Stat. 1921.

### 2. Same—Basis of Compensation.

The compensation should be based on 50% of the difference between claimant's average daily wage at the time of his injury and his wage earning capacity thereafter, in the same employment, or such other line of employment as the physical condition of the claimant will permit him to follow with reasonable comfort.

### 3. Same—Findings as to Disability not Sustained.

Record examined; held, there is not any evidence to support the finding of the commission that the claimant has been temporarily totally disabled since November 9, 1920.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Action by Fursman Coal Company against the State Industrial Commission and Frank Tope for the review of an order made by the Commission on the 16th day of January, 1924. The action for review was commenced by filing a petition in this court on February 13, 1924. Order reversed, and remanded with directions.

Ephraim H. Foster, for petitioner.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for respondents.

Opinion by STEPHENSON, C. Frank Tope, the respondent, received a personal injury in the course of his employment, on November 9, 1920, while engaged in mining coal for the Fursman Coal Company. The injury resulted from a falling rock which caused a fracture of the twelfth dorsal vertebra. The employe was receiving an average wage of $10 per day at the time of his injury. A hearing was had before the Industrial Commission for the purpose of determining the compensation which the employe should receive for the injury. The Commission allowed a compensation of $18 per week, and directed the employer to pay for the required medical attention given the employe. There have been two or three hearings before the Commission heretofore on the question of the compensation to be allowed and continued in favor of the employe. The findings of the Commission on the previous hearings were to the effect that the injury constituted a temporary total disability. The employer continued the payment of the compensation up to and including November 8, 1922. The employer upon the latter date evidently assumed that the nature of the injury to the respondent had reached the stage of a partial permanent disability, and that the respondent was capacitated to perform services in another line of employ-

ment, as it then tendered employment to him as a "slack trimmer" at a daily wage of $6.86. The petitioner further offered to allow the employe a compensation of fifty per cent. of the difference between the wage received at the time of the injury and the wage as offered for the present employment. The duties of a "slack trimmer" require him to be and remain in a railway coal car, where the coal is dumped from the mine cars through a coal-chute. He is required to pick the pieces of slate from the coal and throw the same outside of the car. The pieces of slate are from the size of the hand up to and including a weight of about two and one-half pounds. The coal car in which he is required to perform his duties, is placed under a roof and protected from the weather. The employe refused to accept the tendered employment and compensation on the ground that he was incapacitated to perform services of any nature. Thereupon the petitioner commenced its proceedings before the Industrial Commission for the first time, to cause the compensation of the respondent to be fixed in a sum of money equal to 50% of the difference between a daily wage of $10 and the daily wage of $6.86, for the employment tendered. The issues as created and tendered to the Industrial Commission for trial were, whether or not the injury to the employe then constituted a permanent partial disability, and whether or not he was able to perform service in some line of employment. The Commission heard the question and entered the following order in the cause on January 16, 1924.

"That the claimant herein is at this time and has been since November 9, 1920, temporarily totally disabled as a result of an injury received on said date while in the employment of the Fursman Coal Co."

"That as a result of said injury the claimant herein is in need of further medical attention, including treatment of his mouth."

Thereafter, and on February 13, 1924, the petitioner commenced its action in this court for a review of the proceedings had in the trial of the cause for the reversal of the order.

The judgment of the Industrial Commission had the effect of denying the contentions of the petitioner, that the injury was in the nature of a permanent partial disability, and that the respondent was able to perform services in the line of employment tendered to him. The appeal presents a question of fact; consequently, the order must stand if there is any evidence to support the findings.

This court is denied jurisdiction to retry the issues of fact made by the evidence between the parties. Kennerson v. Thames Towboat Co., 89 Conn. 367, 94 Atl. 372, L. R. A. 1916 A, page 436; International Harvester Co. v. Ind. Comm., 157 Wis. 167, 147 N. W. 53, Ann. Cas. 1916 B, page 330. Whether or not the evidence was sufficient to create an issue of fact for trial between the parties is one of law, and is for determination by this court. McCracken v. Mo. Valley Bridge Co., 96 Kan. 353, 150 Pac. 832, Ann. Cas. 1918 B, page 689; DeConstantin v. Public Service Comm., 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916 A, page 329; see note to L. R. A. 1917 D, page 188.

The selection of the standards to be applied by this court in determining whether or not an issue of fact has been created by the evidence between the parties for trial by the Industrial Commission, is a question of law for this court to determine. The selection and application of the standards for the test of the question should be such as are calculated to give effect to the purposes and intent of the Workmen's Compensation Act. The respondent asserts rights that find lodgment in a law governed by rules different from those at common law. The Workman's Compensation Act has created and established a new basis for liability, and one different from that of the common law for compensating employes for injuries suffered in the course of their services. The Workmen's Compensation Act contemplates the compensation of the employes for injuries received by them in the course of the employment, which was denied under the rules of the common law. The effect of the act is to add a new scope of liability for injuries suffered in the course of employment, in addition to that which existed at common law. In re McNichol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916 A, page 306; Coronado Beets Co. v. Pillsbury, 172 Cal. 682, 158 Pac. 212, L. R. A. 1916 F, page 1164; Kimbal v. Ind. Comm., 173 Cal. 351, 160 Pac. 150, Ann. Cas. 1917 E, page 312, L. R. A. 1917 B, 595; Milliken's Case, 216 Mass. 293, 103 N. E. 898, L. R. A. 1916 A, 337; In re Donovan, 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915 C, page 778.

The obligation rests upon the respondent to support his right of recovery and the rules of construction asserted by him for fixing liability upon the petitioner, in harmony with the rules necessary to give effect to the intention of the legislative body in creating the new field of liability. The effect of the Workmen's Compensation Act is to enable the employe to recover for an injury, for which the employer was liable at common law, at a less cost than what he

would be required to expend to recover in a common law action. The amount of his recovery for a personal injury is made certain by the terms of the act, and does not depend upon the eloquence of his counsel or the whims or caprice of the jury in the particular case. Lewis v. Ind. Board, 52 Mont. 6, 155 Pac. 268, L. R. A. 1916 D, page 628. The purpose of those concerned in the passage of the act was to affect a saving to the employes, below that expended in the collection of compensation by a common law action, and pass such saving to another class of employes, in the way of compensation for injuries suffered by them in the course of employment, which was denied to them at common law. The effect of the new field of liability is not to add additional burdens either to the employer or to that class of employes who might have recovered compensation under the common law rule of liability. The further effect of the Workmen's Compensation Act is to use the savings made by the employes in the collection of their compensation, which they would expend in such collection at common law, to make provisions for compensating employes falling into the new class of liability, instead of leaving them as a charge, to fall upon the public body for support. A casual study of the question shows clearly that it would be more satisfactory to the injured employe, to his dependents, and to the public body, and conducive to better results, to provide the new compensation for the employe to maintain himself and dependents in the same household during the period of incapacity. The burdens are not increased or the benefits impaired, as they affected or concerned the interested parties under the common law. Not only are the rights of the respondent involved in the construction and application of the Workmen's Compensation Act, but that class of his fellow-employes, who were formerly denied recovery under the common law rules. A liberal construction has been applied to the act to bring employes within its scope for compensating injuries suffered by them in the course of their employment. The provisions of the Workmen's Compensation Act evidence an intent on the part of the legislative body that it be liberally construed, so as to effect the purposes of the act. A liberal construction and application of the act, in part, and a restricted construction in other respects, would defeat the purposes of the act and subject that class of employes, who were formerly denied recovery at common law, to the probable loss of the benefits of the act.

The claimant went to Joplin some time after receiving his injury, where he was married and lived for some little time. The claimant then went on a camping expedition to a lake where he fished for several days. It appears that the claimant, within a few months after the date of the accident, was so far recovered from the effects of the injury that he was able to walk without the aid of a cane. The respondent went to the hospital shortly after the date of his injury and was placed in a cast. He wore the cast for some time, and when it became somewhat uncomfortable to wear he removed it, contrary to the instructions of his doctor. The claimant after leaving the hospital was fitted with a steel brace. He wore this for some time and on account of his claim that it caused discomfort, he took off the brace and threw it away. The Commission ordered the respondent to submit to a physical examination on different dates, to be made by Drs. Buchanan and Reed. Dr. Horace Reed submitted a report to the Commission of the claimant's physical condition under date of August 16, 1923. The examination showed, in part, that respondent weighed 158 pounds, blood pressure 130-95100. No evidence of infection in the upper air passage, lungs clear, no evidence of disease, heart negative of any organic trouble, and no area of tenderness. The report further showed a slight prominence of the spine in the lower dorsal region, which is visible when the claimant assumes a normal posture. There is no evidence whatever of injury to the spinal cord. The physician made the following comment on his examination:

"In my opinion the injury is permanent so far as weakness is concerned. He can never take up his occupation as a worker in the mine. I am of the opinion that the condition can be improved by the application of a suitable orthopedic brace. This brace should not, when first applied, completely correct the deformity, but should be adjusted at intervals of one to several months, until eventually it would hold his spine in normal position. The claimant should understand that in order to get results he would have to cooperate, that at first a brace would be uncomfortable, and that in time he would become accustomed to it and be more comfortable because of it.

"With such an appliance he could take up some light work not requiring any large amount of physical exertion but which would, to a certain extent, be productive. Occupation is further desirable because of the wholesome effect it would have on his nervous and mental stability."

The reports of both physicians show that the claimant is well nourished and well developed.

It appears from the evidence offered at the hearing in this cause that the claimant refused to wear a steel brace, or plaster cast. The testimony of the physicians was to the effect that either a steel brace or plaster cast would correct the injury or deformity suffered by the claimant. The testimony of the physicians was to the effect that plumbers and other laborers, who had sustained similar injuries, were able to wear casts and braces and perform heavy manual labor without suffering inconvenience or pain. The testimony of the physicians appears to show that the respondent would be able to engage in service as a "slack trimmer," if he were fitted with a steel brace or plaster cast. It appears that the respondent has been traveling about as freely as if he had not been injured. The physical examinations of the respondent showed the vital organs of the body to function normally. It appears that if the claimant suffered ill results from moving around, the blood pressure, heart, and other vital organs of the body would reflect the ill effects. The respondent not only owes the duty to himself and his dependents to take the treatment prescribed for his recovery, but a like duty to his fellow employes coming within the provisions of the Workmen's Compensation Act. If persons who were similarly injured may engage in manual labor by wearing braces or casts, the respondent should not have refused to take similar treatment.

The testimony is that the respondent may perform services as a "slack trimmer" after being fitted with a suitable plaster cast or steel brace. The further testimony is that the plaster cast or steel brace would not only enable the respondent to perform such services, but would effect a cure of the deformity or injury. The respondent has not, so far as the evidence shows, engaged in any work since his injury, but has been able to move around as a person would do ordinarily, without showing any ill effects. The testimony of the respondent that he is not physicially fitted to perform the service as a "slack trimmer" stand alone, as opposed to the evidence of physicians that he can perform the service after being fitted with a steel brace. The fact that respondent may be able to perform this service after being fitted with a steel brace or cast is made apparent by the testimony of the physicians that plumbers and other laborers suffering from similar injuries, and so fitted, perform heavy manual labor without inconvenience. The evidence does not show that the respondent has undertaken to perform services of any kind: consequently, he is not in a position to testify that he could not perform the service required of a "slack trimmer," after being fitted with a steel brace. The testimony of the respondent amounts to a mere surmise on his part, as opposed to the evidence of the physicians, that other persons receiving a similar injury have been able to perform heavy manual labor after being fitted with a brace or cast. We have the mere statement of the respondent that he cannot perform a class of service, under a condition which he has never experienced, as opposed to the testimony of doctors, who have examined him and testify that he is physically able to perform the services, after being fitted with the steel brace or cast. If we apply the liberal constructions to the questions involved in this appeal, as are ordinarily applied in bringing injured employes within the scope of the Workmen's Compensation Act, the same rules will deny the sufficiency of the repondents testimony to create an issue of fact as opposed to the testimony of the physicians. If the respondent had offered any tangible testimony that he was not physically fitted to perform the services required as a "slack trimmer," it would have been sufficient to join an issue with the petitioner on the question. A finding by the Industrial Commission in favor of the respondent on the issue of fact would have been binding in this appeal. The question as to whether or not the testimony of the respondent was sufficient to create an issue of fact for trial by the Commission is a question of law for this court to decide. The testimony of the respondent was not sufficient to form an issue upon the claim of the petitioner that the respondent is able to perform service as a "slack trimmer," and the Commission should have modified the previous award so as to allow the claimant fifty per cent. of the difference between a wage of $10 per day and $6.86 per day.

If the respondent should permit himself to be fitted with a brace or cast. and then engage in service as "slack trimmer" for a sufficient period of time to ascertain his fitness to perform the service, and a physical examination by doctors should show ill effects from the service, then a different question would be presented from that involved in this appeal.

The respondent must abide by an award of fifty per cent. of the difference between the daily average wage of $10 and that of $6.86 per day, if the petitioner is able to offer him such employment, until he engages in such service, and is able to show from a physicians examination or some tangible evidence that he is incapacitated to perform

the services. Cosmos Mining Co. v. Ind. Comm. et al., 101 Okla. 283, 225 Pac. 720.

If the respondent refuses to permit himself to be fitted with a proper support and refuses to engage in a light class of employment. as tendered to him by the petitioner, or refuses to permit such treatment, as is usually given a similar injury, he must continue to accept the compensation as fixed by the foregoing rule.

It is recommended that the order of the Industrial Commission be reversed and remanded, with directions that respondent be allowed as compensation fifty per cent. of the difference between a daily average wage of $10 and $6.86 per day, subject, however, to any later hearing which may be had in this cause according to the rules herein expressed.

By the Court: It is so ordered.