## DERHAMMER v. DETROIT NEWS.

Master and Servant—Workmen's Compensation Act—"Horseplay"—Accident Not Received in Course of Employment.
Where fellow employees of plaintiff, drivers of trucks, while waiting for their trucks to be loaded, indulged in "horseplay" by squirting water over plaintiff, and he, after complaining to the foreman who did nothing to stop it, retaliated by getting down from his truck and squirting water over them, when he was pushed down and a bottle which he had in his hand was broken, resulting in the cords of his fingers being cut, said accident did not arise out of his employment within the meaning of the workmen's compensation act.[1]

Certiorari to Department of Labor and Industry. Submitted January 21, 1925. (Docket No. 96.) Decided April 3, 1925.

Joseph F. Derhammer, Jr., presented his claim for compensation against the Detroit News for an accidental injury in defendant's employ. From an order awarding compensation, defendant and the General Casualty & Surety Company, insurer, bring certiorari. Reversed, and order vacated.

*Alexander & Ruttle,* for appellants.

*Frederick T. Witmire,* for appellee.

SHARPE, J. Defendants review by certiorari an order of the department of labor and industry awarding plaintiff compensation for an injury sustained by him on September 17, 1921. The only question presented is: Did the accident arise out of the employment? The facts are not in dispute. Plaintiff was

[1]Workmen's Compensation Acts, § 71.
On injuries caused by sportive acts, as injuries arising out of and in the course of the employment, see note in L. R. A. 1918E, 504.

in the employ of the Detroit News as driver of an electric truck used in making deliveries of papers to the railroad stations. He had nothing to do with the loading of the papers. He was simply required to be within calling distance when the truck was ready to go out. A number of other men were similarly employed. Plaintiff testified:

"Why, as I say, I was sitting there on the paper drop when the boys, Mr. Billington and Mr. Ames, walked in with a mouthful of water and stood in front of me and squirted the water on me. They turned around and walked out, and I told them to quit it before they went out, and they didn't say anything, they just laughed. Pretty soon they come back with another mouthful. Mr. Billington squirted the water, but Mr. Ames did not at that time. I told them to quit. I asked them to quit a good many times. I walked out in the other room, and I got a mouthful of water, and I came back, and I squirted that water on them. I sat down again, and pretty soon they come back with a can of water, and I knocked the can of water out of Billington's hand. The same thing occurred two or three times. I got the same can of water and set it on the back of a repair truck just outside the door where I was, and I walks over and stands in another driveway door leaning against the doorway, and the boys commenced to gather round me, you know; I was pretty sore. Finally Billington came up in front of me, and on the other side was Mr. Ames, and they commenced to kid me and everything. I didn't know they had any water, but the water was sitting on the opposite driveway from me, on the back of the truck. He threw water all over me again, and then runs and gets upon the paper, the loading dock. I am in the other room, and there was Ames with a pail of water which he didn't throw up at all. I walked to him, and said something, I can't remember what it was, but he put the water down. Mr. Billington had somebody else on his truck that drives it outdoors for him, as far as Third street, and he gets on it himself and I didn't get him. When he comes back in, I was up in my machine,

and I walked up to him, and I says, 'Are you going to quit this?' I said, 'Somebody is going to get hurt,' which I had repeated many a time before. I asked him in a quiet way, 'Are you going to quit, or somebody will get hurt.' He was talking to somebody else. I walked down probably five machines further, and stood with my back to him, I remember Mr. Beaushaw sitting in his truck, my back to him, looking at the dock. I had a bottle in my hand. I turned just in time, I heard something, I heard somebody holler, to see Mr. Billington coming, running. I ducked my head like that, and he bumps into me, pushes me backwards, with the bottle in my hands, which breaks and cuts the cords of my fingers."

He further testified that he talked with the foreman of the room about it:

"Yes, when I walked back from chasing Mr. Billington out, I walks over to this party, and I says to him, 'You ought to get this water for allowing it,' and walks away from him. He didn't say nothing. I said, 'You ought to get this for allowing it.' "

The department reached the conclusion that, as the plaintiff was not the aggressor in the fooling indulged in, and such fooling was permitted and countenanced by the foreman in charge of the room, the case of *Glenn* v. *Reynolds Spring Co.*, 225 Mich. 693, was controlling.

While it has been the policy of this and other courts to place as liberal a construction upon the words "arise out of the employment" as is consistent with their ordinary meaning when considered in the light of the purpose sought to be accomplished by the law, we have no right to legislate or permit a recovery for an injury which has no causal connection with the work which the employee was engaged to perform. The reasoning of the majority of the court in the *Glenn Case* was summarized in the last paragraph of the opinion as follows:

"The conclusion here reached rests solely on the findings of the board: (1) that deceased was injured while in the performance of his usual work; (2) that he was subjected to an unusual hazard while at such work by reason of the use to which the electric wires were put; (3) that such hazard was unknown to him, but known to his employer; (4) that there was such a causal connection between the conditions under which his work was required to be performed and the injury received as justified the finding that it arose out of his employment."

In this case (1) plaintiff was not injured while in the performance of his usual work; (2) the squirting or throwing of the water could not in itself have caused an injury; (3) plaintiff not only knew what was being done in that respect, but participated therein; (4) he voluntarily left the cab of his truck, wherein his work required him to be, and prepared himself to resist further action on the part of Billington.

Little importance can be attached to the claim of the plaintiff that he informed the foreman of the room of what was being done and that he made no attempt to stop it. Some men, when not engaged at work, indulge in foolish pranks, harmless in themselves, but frequently a source of annoyance to their fellows. Usually, if others do not participate they will not be persisted in. While it is the duty of the man in charge to put a stop to acts and conduct which may result in injury, as was pointed out in the *Glenn Case*, there is a limit to the restraint which can be well placed upon the activities in the way of sport which employees may desire to indulge in when not at work.

The question of liability under similar circumstances is discussed in Dosker's Manual of Compensation Law, p. 105, and 1 Honnold on Workmen's Compensation, § 121. *Willis* v. *Industrial Commission*, 78 Okla. 216 (190 Pac. 92), and *M'Intyre* v. *Rodger & Co.*, 41

Scot. L. R. 107, 11 Scot. L. T. 467, not cited or referred to in either *Tarpper* v. *Weston-Mott Co.*, 200 Mich. 275 (L. R. A. 1918E, 507), or in the *Glenn Case*, may be read with profit.    We quote from the latter:

"If two workmen    *    *    *    leave their work and begin to indulge in horseplay, they are not doing their master's work, but on the contrary are doing what is absolutely inconsistent with the carrying out of their master's work.    *    *    *    It cannot be said that anything which happens in consequence of such conduct arises out of his employment.    The moment they begin to do something for their own gratification or amusement, apart from their work, any accident arising out of that does not    *    *    *    arise out of the employment."

We cannot but conclude that there was no such causal connection between the work plaintiff was required to do and the horseplay indulged in as warranted the finding that his injury arose out of his employment.

The order awarding compensation is reversed and set aside.

McDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.