ROBERT MILLER, APPELLEE, V. CENTRAL COAL & COKE COMPANY OF OMAHA, APPELLANT.

FILED OCTOBER 7, 1932. No. 28462.

*Stewart, Stewart & Whitworth,* for appellant.

*Rudolph Tesar* and *Bartos, Bartos & Placek, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

DEAN, J.

Robert Miller began this action pursuant to the provisions of the workmen's compensation act to recover for certain personal injuries which he alleges he sustained, on or about March 28, 1931, while in the course of his employment as a night watchman by the Central Coal & Coke Company of Omaha. From an award in Miller's behalf by the compensation commissioner, the company appealed to the district court. The court decreed that the plaintiff should receive $14 a week from and after April 16, 1931, the payments to continue as provided for a total disability under section 48-121, Comp. St. 1929, and that the plaintiff also recover for hospital and medical expenses and for attorney's fees. The company has appealed.

It is argued that the evidence is insufficient to establish an injury to the plaintiff in the course of his employment.

The record fairly discloses the following facts: The plaintiff was on his knees under a counter engaged in cleaning the office floor, on the night in question, and while so occupied he thought he heard some one enter the office. He arose quickly and in so doing struck his back and shoulder on the corner of the counter. Subsequently he discovered that his back was swollen and discolored and that two lumps had developed thereon. It appears that he continued working until April 16, but, owing to his injury, he was unable to perform any labor thereafter. The plaintiff was under the care of various physicians during the time intervening between the above date and September, when notice of his injury was filed, but none of them determined the real cause of his disability until some months after the injury was sustained.

The record discloses that the plaintiff was in the employ of the company for some time prior to the accident, and that, while so engaged, he had never been incapacitated except on one occasion when he suffered an injury to one of his feet, for which he was compensated by the company.

One, of plaintiff's physicians testified that the facts incident to the injury were related to him substantially as they were presented at the trial by the plaintiff. Upon an examination of the plaintiff, he found a fixation of the right scapula, a loss of power of adducting the arm, or moving it in back and in front of his body, and some atrophy in the muscles of his arm. Certain X-ray pictures revealed an inflammatory condition of the bone which, in the opinion of this physician, is progressive and permanent, so far as he could ascertain. He also testified that blood tests disclosed a syphilitic condition in the plaintiff's system, and that this became aggravated by the injury and caused the disability complained of herein. In fact, the physician testified that if he had not obtained the history of the accident from the plaintiff he would have questioned him about a probable injury to his shoulder.

As stated above, the condition in the plaintiff's arm is progressive and the entire shoulder bone may be taken or destroyed by the diseased condition. Nowhere, however, does it appear that the plaintiff, previous to the disability herein, had suffered from or was unable to work because of the disease revealed by the blood tests. In the opinion of the physician above mentioned, and that of one other, the condition prevents him from doing any physical labor. and it fairly appears from the weight of the evidence that the plaintiff is totally disabled.

A physician called by the company testified that the plaintiff related to him that his shoulder and one arm were hurt in the course of his employment by the defendant. This physician removed a portion of the bone in the shoulder to obtain material for a diagnosis. The operation disclosed an area of chronic inflammation and bone destruction in the tip of the scapula or shoulder blade, and he testified that a trauma or injury such as sustained by the plaintiff is apt to "light up" the type of infection from which the plaintiff suffers. In his opinion, the plaintiff's shoulder may be restored to almost normal

with an antisyphilitic treatment or by surgery, although he could not say for certain that it would clear up entirely.

The evidence of an interne in a hospital where the plaintiff was treated was introduced by the company in an effort to prove that the injury was not sustained in the course of his employment. This witness testified that the plaintiff informed him that he was injured when he was jolted against the side of a car on a bumpy road. The plaintiff was recalled, however, and denied having told the interne that he received the injury in this manner. But he testified that he told the interne, instead, that while riding with his landlord, after the injury to his shoulder, he was compelled to ask him to return home from the fact that the jolting of the car hurt his shoulder.

As noted above, written notice of the accident was forwarded to the manager of the company some time in September, or about five months after it occurred, but all within the time prescribed by statute. And the plaintiff testified that he told the yard foreman about his injury not long after it happened and that the foreman visited him at his home and afterward at the hospital. On April 16 the plaintiff stated that he "laid off" on account of his condition, but when he reported for work the following Monday, namely, on April 18, he was informed that his services were no longer needed because of lack of work and that the foreman was replacing him. The foreman denied any knowledge of the injury to plaintiff, notwithstanding he and the plaintiff lived across the street from each other. It appears, however, that the foreman testified before the compensation commissioner that he, the foreman, was a "kind of a boss around the yard" and that he knew of the plaintiff's injury.

The superintendent of the company testified that he did not know of the accident until some time in August or September. From his evidence it appears that he left his office every evening before the plaintiff came on duty as a night watchman, and that the foreman was author-

ized to and did give orders to plaintiff in the absence of this superintendent. We think the evidence fairly discloses that the plaintiff did apprise the foreman of his injury and, in such case, notice to the foreman was notice to the company. *Glenn v. Reynolds Spring Co.*, 225 Mich. 693.

In *Gilcrest Lumber Co. v. Rengler*, 109 Neb. 246, where an employee accidentally suffered a slight bruise upon his shin, which was not sufficient of itself to cause disability, but which three days later, owing to the diseased condition of his blood, formed an ulcer, we held that the accident was the proximate cause of the disability resulting from the existence of the ulcer, and that such disability was caused by an accident arising out of and in the course of his employment. Other jurisdictions have held to the same proposition in similar cases where the employee there in question had a syphilitic condition of the blood that caused the disability after the accident there involved. *Crowley's Case*, 223 Mass. 288; *Pinyon Queen Mining Co. v. Industrial Commission*, 59 Utah, 402; *Bongialatte v. H. Wales Lines Co.*, 97 Conn. 548; *Indianapolis Abattoir Co. v. Coleman*, 65 Ind. App. 369; *Hanson v. Dickinson*, 188 Ia. 728; *Finkelday v. Heide*, 230 N. Y. 598. And where an employee, as in the present case, suffered an injury to his back and shoulder, causing a dormant disease to flare up, and where the resultant disability is attributable to the injury, such employee is entitled to compensation within the provisions of the workmen's compensation act.

As noted above, the court decreed that the plaintiff should receive $14 a week from and after April 16, the payments to continue as provided for total disability. The company contends that the court erred in failing to find whether the plaintiff's disability is temporary or permanent or to make a finding as to the period during which he shall be paid compensation. But no motion was made by the company to make the decree more certain. And where the evidence establishes that the condition of

the plaintiff's shoulder totally disables him from performing physical labor and that, so far as his physicians are apparently now able to ascertain, such condition will be permanent, we cannot, of course, allow technicalities to prevent the plaintiff from receiving the compensation due him in the premises. But the company is not prevented from seeking a modification of the judgment at some future date should the plaintiff's condition improve.

We are not unmindful of the fact that it is the duty of this court, where the evidence upon a vital point is conflicting, to try such cases *de novo,* and where the trial court saw the witnesses and heard them testify and must have accepted one version rather than the other, the judgment will not ordinarily be disturbed. *Jones v. Dooley,* 107 Neb. 162; *Southern Surety Co. v. Parmely,* 121 Neb. 146.

Complaint is also made that the amount allowed as attorney's fees by the trial court is excessive. We are inclined to agree with counsel on this feature in view of the fact that, as pointed out in both briefs, only one day was required for the trial of the case. The amount of the attorney's fee is therefore fixed at $100, with an allowance of an additional $100 for services in this court. The plaintiff is not entitled to a penalty for waiting time as he filed no claim for about five months after the injury and there was some dissension in respect of the merits of the claim herein.

AFFIRMED AS MODIFIED.

DAY, J., dissenting.

It is my opinion that the appellee's disability is not compensable. The disability is not due to any injury resulting from an accident occurring in the course of his employment.