## SULLIVAN v. WASHINGTON TERMINAL CO.
### No. 5795.

Court of Appeals of the District of Columbia.
Argued June 9, 1933.
Decided June 26, 1933.

Vernon B. Lowrey, of Washington, D. C., for appellant.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Henry R. Gower, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a judgment·on a directed verdict in favor of appellee, defendant below, in a suit to recover on an insurance contract.

Appellant's husband, Dennis Sullivan, was killed by a fall from a signal tower in the Washington Terminal Railroad yards, where he was employed by the defendant company. The tower was inclosed entirely by glass, so as to enable the operators inside of the tower to observe every part of the yards. As to what occurred, Garrison testified in substance that he went to the north end of the tower, and on returning passed Sullivan, when they engaged in a childish prank of pushing or snatching one another, which lasted about half a minute. When Garrison returned to his position at the desk as assistant, Sullivan said "that he was not through with him," whereupon he took his glasses off and placed them on the interlocking machine, and Garrison then stepped toward him, and they met about halfway and continued the smacking and tickling, Sullivan being very ticklish. He was laughing when he backed toward the window, and, when he came in contact with the window, the glass gave way and he fell out of the window. From the injuries received in the fall he died the following day.

Sullivan, at the time of his death, was employed as a leverman in K tower, and his duties consisted of operating levers which in turn electrically opened and closed the switches in the yards. Whenever a train was due, the train director would call the numbers of the switches to be set by the levermen, one stationed at one end of the machine and one at the other. They would work the combination and set the proper switches as called. From the testimony it is evident that Sullivan, whose duty consisted of turning levers of a fixed machine which operated the switches at the direction of the train director, was not engaged in the performance of that duty at the time the accident occurred, or immediately prior thereto. The friendly boxing or tickling match with a fellow employee had no connection with his duties whatever.

The verdict was directed by the court below upon the ground that Sullivan was not killed "in the discharge of his duty in the service of the company." Whether he was. so engaged when the accident occurred is the· sole question for consideration on this appeal.

The regulations of the relief association, under which appellant is claiming benefits, provide for payment on the death of a member from accident, or, in event of death, from any other cause occurring during the time for which he shall have contributed to the relief fund. Double benefits in case of accidental death are provided for in the regulations as follows: "In the event of death from accident in the discharge of duty in the company's service within fifty-two weeks from date of injury, twice the amount of the death benefit of the class held will be payable." It will be observed that under these regulations the regular death benefit accrues to a member whether the death be "due to accident or other cause"; but, if the death occur by accident "in the discharge of duty in the service of the company," the beneficiary is entitled to double benefits.

At the time of Sullivan's death, he was the holder of an insurance contract in the relief association maintained by defendant company for the benefit of its employees. The contract provided, among other things, that, if the holder should be killed "in the discharge of his duty, in the service of the company," his beneficiary should receive double indemnity. Appellant is the beneficiary of the contract in question. Upon the death of the husband, defendant company paid the single indemnity, but refused to pay double indemnity, for which this suit was brought.

This is an action on contract. The rights and obligations of the members of the relief department, an unincorporated voluntary association of employees of defendant company, are embraced in regulations which contain the substance of the contract. The benefits are payable out of what is called the "relief fund," and do not belong to defendant company, but are held by it in trust for the relief department.

The whole case turns upon the interpretation of the phrase "in discharge of duty." Most of the cases cited by counsel for appellant arose under employer's liability acts. The underlying principle of these statutes is to make the business bear the burden of industrial accidents whether due to negligence or not. In interpreting such acts, they are construed liberally in favor of the employee. These acts are intended to relieve the employee, injured in the course of his employment, from the loss resulting from his injury and make it part of the cost of the operation of the business, to be paid ultimately by the consuming public, and should be construed so as to carry this intention into effect.

Appellant relies chiefly upon the case of Hale v. Savage Fire Brick Company, 75 Pa. Super. Ct. 454. In that case the employee, a boy eighteen years old, was eating his lunch on the premises where he was employed when two fellow workmen approached him and asked him for some tobacco. On being refused, they attempted to seize the claimant, and, running away from them, he fell over a wall onto a brick pavement, fracturing both wrists. The case arose under the Pennsylvania Workmen's Compensation Act (77 PS § 1 et seq.), which, as pointed out in the opinion, differs in many respects from the acts of other states, in that it does not require that the accident resulting in an injury must "arise out of the employment," but only that it occurs "in the course of the employment." In many jurisdictions both of these elements must be present, but not so in Pennsylvania. In that case the Pennsylvania court dwelt at great length upon the accidents that may occur to an employee in the course of his employment, and indeed goes to the length of holding that any injury incident to the employment occurring on the premises occurs in the course of the employment, but distinguishes many accidents that could not be held to arise out of the employment. This distinction is very clearly pointed out in the opinion of the Pennsylvania court.

But the theory involved in the compensation acts is of little importance in considering the present case, which grows out of a contract of insurance between decedent and the relief department of appellee, and where the burden rests upon the appellant of showing that the conditions under which the accident occurred came within the terms of the contract. An examination, however, of the compensation cases discloses that, while the decisions are not uniform, the weight of authority is that an employee injured by a playful act, such as occurred in this case, is barred from recovery on the ground that the injury does not arise out of the employment. Hulley v. Moosbrugger, 88 N. J. Law, 161, 95 A. 1007, L. R. A. 1916C, 1203; Coronado Beach Co. v. Pillsbury, 172 Cal. 682, 158 P. 212, L. R. A. 1916F, 1164; Derhammer v. Detroit News, 229 Mich. 662, 202 N. W. 958; Lee's Case, 240 Mass. 473, 134 N. E. 268, 20 A. L. R. 870.

Other cases cited by appellant in support of his position are cases arising under the Federal Employers' Liability Act (45 USCA §§ 51–59), which, of course, have no bearing on the question here involved. The courts in compensation cases have gone to the limit, in some instances to the extent of fixing liability on the narrow question of whether or

280

not the injury had any possible connection with the employment. An examination of the regulations of the relief department of the Washington Terminal Company, however, disclose a different policy with respect to compensation for double death benefits. Such benefits are awarded only to the employee injured while engaged in the performance of duty in the presence of danger. In other words, the double benefits are accorded only to the beneficiary of an employee killed in the actual performance of duty, and not as a right attaching to every injury that occurs in and about the place of employment, as seems to be the rule in compensation cases in some jurisdictions.

This is an action ex contractu and not an action ex delicto. Construing the regulations as fixing the terms of the contract, the right to double benefits must be limited to cases where the accident occurs while the employee is actually engaged in the performance of his duties, and should not be extended to accidents merely occurring in the course of or arising out of the employment. Double benefits are an especial privilege accorded under the regulations, and a claimant seeking those benefits should be required to bring his case within the letter of the regulations, and show that the accident occurred while the employee was in the actual discharge of his duties. Plaintiff in the instant case has failed to meet this requirement. The proximate cause of Sullivan's death was not connected with the operation of the levers or incident thereto. It was entirely foreign to his employment, and not connected even remotely with the duties which required his presence in the tower or on the premises of defendant company. It follows that there is no theory on which this action can be sustained. The action of the court below in directing a verdict and entering judgment thereon was correct.

The judgment is affirmed.