(No. 13481.—Judgment affirmed.)
JOHN BARTON PAYNE, Director General of Railroads, Defendant in Error, vs. THE INDUSTRIAL COMMISSION et al.—(FLORENCE E. EAGLESON, Exrx. Plaintiff in Error.)

Opinion filed December 21, 1920.

1. WORKMEN'S COMPENSATION—*injury must arise out of the employment.* To be within the Compensation act the injury suffered by the employee must arise out of the employment as well as in the course of the employment, as the employer is not an insurer against all injuries arising during the time of employment but only those arising also out of the employment or which are reasonably incidental to it.

2. SAME—*when the employer's acquiescence in act of employee must be proved.* Where an employee is injured while doing something not required in his employment or the work he was hired to perform, the employer's knowledge of and acquiescence in the employee's act, or knowledge of the existence of a custom or practice with reference thereto, must be shown to sustain an award.

3. SAME—*when injury received during play with air hose does not arise out of employment.* An injury received while employees are playfully shooting one another with compressed air by means of an air hose does not arise out of the employment, and an award of compensation for the death of an employee so injured is properly set aside where there is no proof that the employer acquiesced in the practice or had any knowledge of it. (*Pekin Cooperage Co.* v. *Industrial Board,* 277 Ill. 53, and 285 id. 31, distinguished.)

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. A. A. PARTLOW, Judge, presiding.

O. M. JONES, and C. W. FLEMING, (W. T. HENDERSON, of counsel,) for plaintiff in error.

H. M. STEELY, and H. M. STEELY, JR., for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Frederick Eagleson, a boy seventeen years old, died as a result of injuries received while in the employ of the Chicago and Eastern Illinois Railroad Company in its shops at

Danville, Illinois. In January, 1919, application was made to the Industrial Commission of Illinois for compensation, which was allowed by the arbitrator and later by the Industrial Commission. On review by writ of *certiorari* in the circuit court the award of the commission was set aside, and the cause has been brought to this court by writ of error.

The deceased worked in the oil room, so-called, of the Chicago and Eastern Illinois shops at Danville for about a month in March and April, 1918, when he was promoted and transferred to what is known as the grease room. The evidence shows that the oil room was about 40x40 feet in size, and the foreman of the oil and grease department sat in the southwest corner of this oil room. Near the northeast corner of this room there was a door in the east wall opening into the grease room, about 12x15 feet in size, and along the south wall of this room were pipes that carried compressed air, with valves and nozzles for attaching hose, and along and on this south wall were also hopper machines for pressing hard grease. The machine at which Eagleson was employed at the time of his injury pressed the grease into flat cakes for use in lubricating the journals of locomotives. There was another machine in the room that pressed the hard grease into round sticks, which were then cut into two-inch sections, for use in the rod cups on the locomotives. These various machines, when filled and closed, were operated by compressed air attached at the tops, and there appears to be nothing dangerous or arduous about this work, the operator simply watching the machines and cutting off the cakes and sticks to the right length. On the north wall of this grease room was a locker, in which was kept a long air hose, which, when needed, was taken out and one end attached to an air nozzle in the grease room and the other end to one of the receptacles in the oil room, in order to transfer oil or grease by air pressure from one receptacle to another. This hose when not in use was not allowed to lie around on the floor or left at-

tached to the air nozzle but was detached and replaced in the locker or cabinet. The evidence shows that on the morning of April 22, 1918, three boys, two aged sixteen and one fifteen, who were employed in the oil room, desiring to transfer some oil from one receptacle to another in the oil room, went into the grease room, and one of the boys, Nulken, took the hose from the cabinet on the wall and according to the usual procedure attached it to an air nozzle on the south wall and then put a new nozzle into the further end of the hose. About this time they began among themselves to "skylark" with the hose, shooting compressed air at each other. The evidence does not show whether the door between the grease room and the oil room was open or closed, but it does show that this hose was attached behind the door, and that from where the foreman sat at his desk in the corner of the oil room he could not see what was going on in the grease room. While playing with the air hose one of the boys would hold the nozzle and another would stand at the valve on the wall and turn on the air, and then they would shoot one of the other boys with the compressed air. When the accident happened Nulken was holding the nozzle at the outer end of the hose and the Elwell boy was at the valve turning the air off or on. The testimony is that the end of the air hose was held six or seven inches from the body or anus of Eagleson, the deceased, and Elwell turned on the air, when Eagleson shouted, "I am blowed up!" and fell to the floor. He was taken to the first-aid station at the shops and later to the hospital, where he died. The testimony of these boys is that they had played around the apparatus at other times, shooting one another with compressed air in the same way, and some of the boys testified that on the day in question the Eagleson boy had been participating in the sport and had helped to shoot the other boys with the air, although one of the boys testified that Eagleson had not taken part in the skylarking that ended in the accident; that just before

the accident Eagleson had turned around, facing towards the machine, to start his work. The evidence does not show clearly which one of the boys started the play and is not entirely in harmony as to whether Eagleson himself took any part in it.

There can be no question that the accident occurred during the course of the employment of the deceased. The only question is whether it arose out of the employment. While this court has never been .required to pass on the question whether an air hose is a dangerous appliance, that question has been passed on in other jurisdictions in cases similar to this where the injury arose'in the course of play, and has been held in some cases not to have arisen out of the employment and not to have been reasonably incident thereto and in others to have arisen out of the employment. In the case of *In re Loper,* 64 Ind. App. 57, where the injury arose in a similar manner from playing with compressed air, it was shown that the employer knew of the custom and such play was permitted. It was held that the employer was liable, largely on the ground that playing with the air, as was done at the time of the accident, had become a habit with the employees, which was known to the employer through his superintendent.

In the case of *Robinson* v. *Melville Manf. Co.* 165 N. C. 495, the compressed air hose was permitted to lie about the floor of the factory without warning to employees against using it, and in sport a boy was shot with the air and died. It was there held, because the employer negligently left the appliance lying around under conditions shown by the testimony, that it should be held liable for the injury.

In Willis on Workmen's Compensation, (12th ed.) 22, it is stated: "It is not within the scope of employment for workmen, whether boys or men, to indulge in horseplay, and injury thereby sustained by a workman, even though he is not a party to the 'larking,' is not an injury by accident arising either in the course of or out of the employment."

In *Federal Rubber Manf. Co.* v. *Havolic,* 162 Wis. 341, the Supreme Court had under consideration a case similar in principle and facts to the one at bar. The court there said: "This court has endeavored to give to the Workmen's Compensation act a broad and enlightened construction, to the end that it may accomplish to the fullest extent its beneficent purpose. It is to be remembered, however, that this purpose was to compensate for injuries resulting from one class of accidents only, namely, industrial accidents. There is liability only 'where at the time of the accident the employee is performing service growing out of and incidental to his employment.' [Citing authorities.] It was held in *Hoening* v. *Industrial Com.* 159 Wis. 646, * * * after full argument and consideration, that the injuries covered by the act are such as 'are incidental to and grow out of the employment.' This seems to mean the same thing as the expression in the English Compensation act, 'arising out of and in the course of the employment.' Under the English act it has been held that accidents resulting from 'larking' or playing with machinery cannot be held to arise out of the employment. * * * How injuries resulting from such inexcusable and revolting horseplay as this can be said to be incidental to the employment we are unable to understand. It is equally impossible to understand how it can be said that the claimant at the time of the accident was performing service 'growing out of and incidental to his employment.' " This reasoning was quoted with approval by the Supreme Court of Michigan in *Tarpper* v. *Weston-Mott Co.* 200 Mich. 275.

*Ballard* v. *Louisville and Nashville Railroad Co.* 128 Ky. 826, was a case where a death occurred from one employee, as a prank, using a compressed air hose which it was not his duty to handle, in such a way that the air entered the body of the second employee and killed him; and the court there held that a compressed air hose is not such a dangerous agency that a master is required to guard it to pre-

vent ignorant or reckless employees from using it to the injury of others, and held that as the master was responsible for the acts of the servants only within the scope of their employment, the master was not liable for this injury; that while the accident occurred during the course of the employment it did not arise out of the employment. To the same effect is *Kirby* v. *Louisville and Nashville Railroad Co.* 187 Ala. 443.

While it is true, as stated in some of these cases, that the use of compressed air in the master's business, similar to the use here involved, is not inherently dangerous as to the appliance or mode of its use, the fact that it has been found dangerous in the cases cited when used in a spirit of play and sport is evidence, to some extent at least, that employees do not always appreciate the dangerous character of such use. It may also, without question, be presumed that boys of about the age of those in this case would be more liable to be tempted to play with the air hose than more mature employees. It is held in most jurisdictions, as here, in construing workmen's compensation statutes, that the injury suffered by the employee must arise out of the employment as well as in the course of the employment. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11; *Mepham & Co.* v. *Industrial Com.* 289 id. 484; *Marion County Coal Co.* v. *Industrial Com.* 292 id. 463.) Where an employee is doing something not required in his employment or the work he was hired to perform, the employer's knowledge and acquiescence, or knowledge of the existence of such custom or practice, must be shown to sustain an award. (*Sunnyside Coal Co.* v. *Industrial Com.* 291 Ill. 523.) The hose in question was kept in a cabinet or locker, and the evidence indicates that the employer or his representative, the foreman of the department, did not know that in skylarking the hose had ever been used by the employees as it was used at the time of the accident. The employer is not an insurer against all injuries arising during the time of

employment, but only those arising out of the employment or which are reasonably incident to it. We think it hardly reasonable to suppose that the employer would anticipate such use of the hose as that here in question.

We think this case is clearly distinguishable from *Pekin Cooperage Co.* v. *Industrial Board,* 277 Ill. 53, and *Pekin Cooperage Co.* v. *Industrial Com.* 285 id. 31, which are cited and relied on by counsel for plaintiff in error. In the first case the injured person, in order to get his turn at the pay window, was required to fall in line and stand there for some time and while so standing in line was jostled and fell and was injured. It may well be said that going to and getting his pay in the manner provided by the employer was a part of his work. The employer knew the conditions and surroundings, and whether he was jostled as a prank by a fellow-worker or not, it was a danger he was compelled to incur in order to get his wages. In the second case the men were employed to place staves in racks and it seems that they were compensated by the number of racks filled with staves. The company had allowed a practice to grow up and be indulged in by which when one man did not have quite enough staves to complete his rack he would take or steal staves from the rack of a neighboring workman. A dispute arose between two employees due to this practice, resulting in injury to one of them. In both these cases the practice causing the accident seems to have been well known by the employer. Here it was not shown that there was any knowledge or acquiescence on the part of the employer as to the employees playing with the hose and the compressed air. The hose was kept in a place which ordinarily would be held a sufficient guard against danger. It was not within the scope of the employment to use it except for the work defined for each employee. We agree with the Supreme Court of Wisconsin in saying that an injury resulting from such inexcusable horseplay could hardly

be said to have arisen out of the employment or to be incidental thereto.

The circuit court rightly set aside the award of the Industrial Commission, and the judgment of said court will be affirmed.

*Judgment affirmed.*