(No. 21941.—)

THE INTERNATIONAL HARVESTER COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(HALBERT O. CREWS, Admr., Plaintiff in Error.)

*Opinion filed October 21, 1933—Rehearing denied Dec. 13, 1933.*

DEYOUNG, J., dissenting.

MYRON E. WISCH, (BENJAMIN B. CRANE, of counsel,) for plaintiff in error.

PEREGRINE & BRUEGGER, (GEORGE M. KELLOGG, JR., of counsel,) for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiff in error's intestate, Lorenz Mirocha, was employed by the International Harvester Company as a molder, assisting in molding parts for engines, in the course of

which employment it became his duty to adjust and otherwise deal with certain clamps on a molding machine. In this particular part of his work it was necessary for him to stand in a stooped or bent-over position. The molding machine was operated by a crew of five men, among whom was one Pinkola, whose duty it was, among other things, to use an air hose, carrying compressed air at eighty-five pounds' pressure, to blow the excess of sand from the mold. The compressed air emerged from this hose through an iron terminal nozzle controlled by a trigger-valve operated by the workman in charge of it. On December 22, 1930, the crew on this machine suspended work at noon for lunch and resumed their respective duties at 12:30 P. M. The accident here in question occurred about two hours later.

It appears from the record that during the forenoon of that day, and perhaps on other days, there had been some "horse-play" among the workmen, including Mirocha and Pinkola. There had been some playful pushing around and kicking, and possibly some rather juvenile pranks with the air hose. The evidence, however, does not show that there was any such conduct on the afternoon of the accident nor at any time after the men had resumed work following their lunch. The foreman in charge of the foundry, including this work, was Peter Kwasinski, and Mirocha testified on the hearing before the arbitrator that this foreman was only around this particular machine every half hour or hour. It was stipulated by the parties on the hearing that "the company did not tolerate horse-play," and this stipulation is, of course, binding. There is evidence, however, from which the commission may have reasonably found that the supervision and discipline were lax and less than required by the type of men employed for the work and entrusted with the appliances being used. At about 2:30 P. M., Mirocha was engaged in his regular duty of adjusting a clamp on the molding machine, thus placing himself in a stooped-over position directly in front of Pink-

ola, who had the air hose, and, while Mirocha was in this position, Pinkola, either by accident or as a matter of horse-play, shot Mirocha with a blast from the air hose, inflating and rupturing his bowels. The evidence leaves some doubt as to whether Pinkola shot the air from a distance of five or six inches against the body of the deceased, or if he actually pushed the nozzle against, or into, his body. Whether it was by accident or intentional horse-play by Pinkola or whether there was any actual contact between the nozzle of the hose and the body of the deceased, we do not consider important or decisive in this particular case. The deceased was, as he described it, "blown up like a balloon." He became unconscious and was taken to a hospital, where it was discovered that his bowels had been ruptured, necessitating an immediate surgical operation, from which he made a reasonably uneventful recovery.

The medical evidence is conflicting as to whether or not there were adhesions subsequent to the operation and as to just how long a period of time the deceased should have been considered as totally disabled, but in view of the conflict in the evidence we do not feel it necessary to disturb the finding of the commission in that respect. (*Allen & Son Co.* v. *Industrial Com.* 349 Ill. 71.) Mirocha died from another cause several months later, and the action was continued by his administrator, who is the plaintiff in error here, and who seeks reversal of a decision of the circuit court of Cook county reversing an award by the Industrial Commission.

In 1917, in the case of *Pekin Cooperage Co.* v. *Industrial Com.* 277 Ill. 53, we held that an employee who was standing in line to get his pay and who was injured by the horse-play of others, not participated in by him, was injured in the course of his employment.

Defendant in error relies principally upon the case of *Payne* v. *Industrial Com.* 295. Ill. 388. In that case a seventeen-year-old boy died as the result of a similar appli-

cation of an air hose and the facts are in some respects like those in the case at bar. In the *Payne case* the hose was used for the purpose of transferring oil or grease by air pressure from one receptacle to another and when not in use was kept in a locker. The deceased, with two other boys, aged fifteen and sixteen years, desired to use the hose to transfer some oil. One of the boys took the hose from the cabinet, attached it to an air nozzle on the wall and then put a nozzle onto the further end of the hose. About this time they began among them to "skylark" with the hose, shooting compressed air at each other. While playing with the air hose one of the boys would hold the nozzle and the other would stand at the valve on the wall to turn the air on and off while they would shoot each other with the compressed air. When the accident happened, Nulken, one of the boys, was holding the nozzle and the Elwell boy was at the valve turning the air on and off. In that case the hose was from six to seven inches from the body of the deceased, but the force was apparently sufficient to blow him up, which it did with fatal result.

It is apparent from this brief statement of the facts that the case now under consideration is much different, and that the *Payne case, supra,* is not in itself sufficient to sustain the position of defendant in error. In the *Payne case* the deceased was actually participating in the horse-play at the time of the injury, and was not, as in this case, actually engaged in a necessary and useful part of his employer's business, within the scope of his employment and for his employer's profit and benefit. The air hose was not, as in this case, connected and in actual use at the moment required by the employer's service, nor in the hands of the employee at the same moment required by the employer to have it for a proper and immediate use at that particular place. The deceased in that case was not, as was Mirocha in this case, entirely unaware of contemporary horse-play, of which he might momentarily expect to

be made the victim, nor was the deceased, as in this case, actually concentrating on the work at hand, with his attention entirely diverted from the puerile pranks of his fellow-workman.

It is clear that Mirocha's injury occurred at a place where he was required by his employment to be, at a time while he was actually engaged in that employment and performing his duties as required by his employer; that he was not participating in any playful acts at the time of his injury, and that this injury was neither caused nor invited by him. At the time of his injury Mirocha was at a place and doing work required by his employment. He was therefore injured in the course of his employment. All of the causative factors of his injury were incidental to that employment, so it must be held that the injury arose out of his employment. It follows that the award of compensation should have been confirmed by the circuit court.

It is suggested in the argument of defendant in error that if the judgment be reversed the cause should be remanded to the Industrial Commission for further proof made available by an autopsy on the deceased. With this suggestion we cannot agree. It is admitted that the deceased died from other causes, and we know of no authority, and none is cited to us, by which such a procedure could be adopted. The proofs were completed and closed by both parties before the death of Mirocha, and we cannot hold that his body can be used as an exhibit for the purpose of introducing cumulative evidence after his death. There is nothing in the record upon which to base any claim of increased or decreased disability after an award, and the request to re-open the proofs must be denied.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to enter an order confirming the award of the Industrial Commission.

*Reversed and remanded, with directions.*

Mr. JUSTICE DeYOUNG, dissenting.