18 So.2d 93

**STOCKHAM PIPE FITTINGS CO. v. WILLIAMS.**

**6 Div. 149.**

Supreme Court of Alabama.

Nov. 26, 1943.

Rehearing Denied May 18, 1944.

London & Yancey, Geo. W. Yancey, and Fred G. Koenig, Sr., all of Birmingham, for appellant.

Huey, Welch & Stone, of Bessemer, and G. P. Benton, of Fairfield, for appellee.

BROWN, Justice.

This is an appeal "by certiorari" authorized by § 297 of the Code of 1940, Tit. 26, to review the judgment of the Circuit Court of Jefferson County, awarding to appellee compensation as the widow of Henry E. Williams, under the elective compensation act. Code 1940, Tit. 26, §§ 292–306.

The evidence is without dispute, and shows that Williams was at the time of his injury and death an employee of the appellant at its plant in the City of Birmingham, and had been such for several years; that on the 11th of June, 1942, after he had

punched the clock at 3:30 p. m., terminating his day's work, leaving his place of work, he went to the bath house and locker room maintained by the employer on its premises for the use of employees at their option, to take a bath and change his clothes and proceeded to the wash basin where several other employes were engaged in washing their hands and face, and then be began to tease one Culbreath, who was so engaged and had his face covered by soapy water, by cutting off, stopping or diverting the flow of the water away from Culbreath's reach, and in a burst of resentment or anger Culbreath threw a piece of soap which he was using at Williams, striking him in the groin on an inguinal hernia causing a rupture of the ileum—the terminal end of the small intestine. This injury superinduced peritonitis causing death on the following day. No one else engaged in this "horseplay" and Williams was the aggressor.

The evidence further shows that the employes of this plant had engaged in horseplay through the years, and though there was no definite printed rule promulgated by the employer forbidding such horseplay, the management had constantly and persistently warned against such horseplay by large signs maintained at different places, and especially in the bath house and locker rooms, and through safety meetings, and printed posters circulated among the employees, that such fooling and horseplay was dangerous, calculated to engender resentment, arouse anger in the person made the butt of the joking, and enjoined due care to avoid such hazard.

Under the terms of the statute, an injury or death to be compensable, must be caused by an *"accident arising out of and in the course of* his employment," and the statute declares that this terminology does "not * * * cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service at the time of the accident, and during the hours of service as such workmen, and shall not include an injury caused by the act of a third person *or fellow employee* intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment, and it shall not include a disease unless the disease results proximately from the accident." [Italics supplied.] Code 1940,

Tit. 26, § 262; Hayes v. Alabama By-Products Corporation, 242 Ala. 148, 5 So. 2d 624; Ex parte Louisville & N., R. Co., (House v. Louisville & N. R. Co.), 208 Ala. 216, 94 So. 289.

The controlling question in this case is whether or not the injury and death of Williams was the proximate result of an "accident arising out of and in the course of" his employment.

█ Pretermitting the question ' of whether Williams' coemployee Culbreath intended to injure him because of Williams' joking and horseplay, we are clear to the conclusion from the undisputed evidence that Williams' injury and death did not arise out of his employment. Appellee's counsel concede that the earlier cases interpreting the Workmen's Compensation Act hold generally, "that compensation is not recoverable for injuries suffered from horseplay or fooling, which was done independently and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the act."

But appellee contends that the modern decisions have extended this rule, or what is to the same effect, have established an exception thereto that, when an injury or death is caused by horseplay not instigated or participated in by the injured workman who was at the time of the injury performing the duties of his employment, such injury is compensable. Appellee further contends that when it is shown that the injury was proximately caused by "horseplay *commonly carried on by the employees, with the knowledge or consent of the employer, so as to constitute a condition or incident to the employment"* such injury is compensable.

Manifestly the appellee's case is not within the first category last above stated. Williams instigated and participated in the horseplay and thereby brought about his injury.

Nor are we of opinion there was any evidence that supported the conclusion that such horseplay was commonly carried on by the employees of the defendant with its knowledge or consent *so as to constitute a condition or incident to the employment.* Otherwise stated, "Upon consideration of all the circumstances, a causal connection between the conditions under which the work *is required to be performed and the resulting injury"* is not shown. In re Mc-

Nicol et al., 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306.

The appellee cites the case of State ex rel. H. S. Johnson Sash & Door Co. v. District Court et al., 1918, 140 Minn. 75, 167 N.W. 283, 284, L.R.A.1918E, 502, as controlling because the Alabama Act was largely an adoption of the Minnesota Act. The injured workman in that case, to quote from appellee's brief, "One Filas, was employed in a wood working factory where the evidence showed that his fellow employees were accustomed to throwing missiles, such as blocks of wood and sash pins at one another including the employee; that the employer knew of the custom or should have known of it by the exercise of due diligence; that a fellow employee threw a sash pin at Filas in sport and without intending to injure him; that it hit him in the eye and destroyed his vision. Filas was at the time at his place of work engaged in and about the duties of his employment, and did not participate in the horseplay. Liability was rested upon the causal connection between the injury *and the condition under which the defendant required him to work.*" The court observed: "The rule is well enough settled that where workmen step aside from their employment and engage in horseplay or practical joking, or so engage while continuing their work, and accidental injury results, and in general where one in sport or mischief does some act resulting in injury to a fellow worker, the injury is not one arising out of the employment within the meaning of compensation acts. * * * Here we conceive the situation to be different. Filas was exposed by his employment to the risk of injury from the throwing of sash pins in sport and mischief. He did not himself engage in the sport. His employer did not stop it. The risk continued. The accident was the natural result of the missile throwing proclivities of some Filas' fellow workers and was a risk of the work." In citing and commenting on cases to support the ruling, the court stressed the fact that the injured workman at the time of his injury was engaged in the performance of his work and did not participate in the horseplay.

The same court in Barden et al. v. Archer Daniels Midland Co., 187 Minn. 600, 246 N.W. 254, 255, observed: "It is not questioned that at the time of the fatal injury Barden was in the course of relator's employment. The only question presented is whether the accident arose out of such employment. The commission's finding that it did so arise was proper."

■ Under the modern authorities, injury resulting from horseplay to be compensable, such horseplay must not be instigated by the injured workman and he must at the time be engaged in the duties of his employment. Barden et al. v. Archer Daniels Midland Co., supra; McKenzie v. Railway Exp. Agency, Inc., 205 Minn. 231, 285 N.W. 529, 530; Socha v. Cudahy Packing Co., 1921, 105 Neb. 691, 181 N.W. 706, 13 A.L.R. 513.

Here the employer had used every effort by repeated warnings and safety meetings, consistent with maintaining a wholesome morale, to discourage such practices among its employees, going to the extent in one or more instances of discharging guilty employees. And in the instant case the injured workman had resorted to the bath house where his employment did not compel him to go, but where he could go at his option, and then himself instigated the horseplay that resulted in his death. In the circumstances disclosed by the undisputed evidence, we are constrained to hold that, his injury and death did not arise out of his employment and is not compensable. Industrial Commission et al. v. Rocky Mt. Fuel Co. et al., 107 Colo. 226, 110 P.2d 654.

It results that the writ of certiorari is hereby granted and the judgment of the circuit court is, therefore, reversed and one here rendered dismissing the suit.

Writ granted; reversed and rendered.

GARDNER, C. J., and THOMAS and LIVINGSTON, JJ., concur.

## On Rehearing.

BROWN, Justice.

Appellee challenges the soundness of the opinion not only as to the law in the case but also points out two instances in which he contends the statement of fact is erroneous. We quote from his brief:

"This statement is incorrect first in an unimportant part, in stating: 'This injury superinduced peritonitis causing death on the following day.' Death resulted nearly a month later, viz., July 8, 1942. * * *

"The second incorrect statement is that 'in a burst of resentment or anger Culbreath threw a piece of soap which he was

using at Williams.' Culbreath said he was just playing, testifying in this respect that: 'From that, why, I pick up the bar of soap and threw at him, you know, just playing, running him away while I was washing.'"

The first error in the statement of fact appellee concedes to be immaterial. The second is not incorrect. The very act of Culbreath running Williams away while he (Culbreath) was washing and throwing the bar of soap at him showed a burst of resentment, although Culbreath may not have intended to injure Williams. This, however, is beside the point. The controlling fact, as shown by the undisputed evidence, is that both Williams and Culbreath had ended their day's work, punched the clock and, as expressed by one witness, "were on their own." Thereafter they were not engaged in work for their employer, were not at the place where their work compelled them to be, and the facility, the bar of soap, which was used to cause the injury, was not furnished or supplied by the employer. The workmen supplied their own soap and towels. The risk resulting in the injury was created by the voluntary act of the injured workman.

We have reexamined the authorities— cases cited by appellee in original brief and in brief on rehearing—and feel safe in saying that in every case where the injury resulted from skylarking or horseplay and compensation was awarded, the injury occurred either during the hours of work or after the workman had reported for duty and was waiting to go on his job. To state the proposition in other words—the injured employe was at his place of work and engaged therein, or had reported for duty and was waiting for the instrumentalities provided for his use to be brought to him by the employer in the usual course, or was just concluding the work and was injured in consequence of the condition of the place where his work required him to be, and the injured workman did not originate or participate in the skylarking or horseplay.

There is one apparent exception. We refer to the case of McCoy v. Spriggs, 102 Pa.Super. 500, 157 A. 523, 524. In that case the injured workman was engaged in and about the duties of his employment. The opinion of the court states the facts as follows: "* * * 'About lunch time, at 11:55 a. m., the deceased had measured a

board to be put in a floor and walked across the room with this board and his hand saw to a keg on which he intended to saw the same. Close by the keg, one of the other carpenters was down on one knee, placing boards in the floor. McCoy (the deceased), when he came up to the man, laid one end of this board, which he was carrying, against this man's knee and said: "Is there anything I can do for you?" The man replied, "Take that board off my knee." The deceased dropped the board. The other man jumped to his feet. They immediately engaged in a friendly wrestling match. Deceased threw this other man to the floor, and shortly thereafter, while they were still scuffling, deceased rolled over on his back unconscious. In a short time he was dead. The cause of death was a rupture of a blood vessel at the base of his brain, i. e. apoplexy.'"

The court states the question presented as follows: "This appeal is from the action of the lower court in sustaining an award in a workmen's compensation case and involves one question: Was the testimony sufficient to show a causal relation between the accident and the death?" The court held that there was evidence to show such causal connection and affirmed the judgment. This case is out of line with the great weight of authorities and does not support liability in the case at bar.

In East Ohio Gas Co. v. Coe et al., 42 Ohio App. 334, 182 N.E. 123, the opinion states: "It is true that the transaction had no direct connection with or relation to the work being performed by Coe, but it did occur while Coe was actually engaged in performing the duties of his employment. It is therefore important to determine whether the injury which Coe suffered had its cause outside of and disconnected with his employment, or whether his employment had some causal connection, directly or indirectly, with the injury."

The opinion further observes:

"This is a so-called 'horseplay' case—that is, one in which a workman was injured by the sportive act of a fellow workman—and in a great many jurisdictions the courts do not recognize the principle that risk from pranks of fellow workmen are incident to the business and grow out of the employment, and in such jurisdictions it is quite generally held that no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay or fooling which was done in-

dependently of and disconnected from the performance of any duty of the employment. In a much smaller number of jurisdictions the courts recognize that horseplay or fooling among the employees *while at work* is incident to the business and can be fairly said to grow out of it, and in those jurisdictions the right to compensation is sustained where an employee who is injured through horseplay or fooling by other employees took no part in the fooling but was attending to his duties.

"Ohio belongs to the latter class of jurisdictions. * * *" This case does not support liability here.

In Leonbruno v. Champlain Silk Mills et al., 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522, 523, the court, speaking through Cardozo, J., in the very first sentence of the opinion states: "The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horseplay, and had no knowledge of it till injured. The question is whether the accident was one 'arising out of and in the course of employment,' * * *." The award was sustained.

In Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 160, 13 A.L.R. 524, 536, 537, to quote from the opinion: "Hollenbach was at the place of his employment engaged in performing an incident of the employment, and was injured by accident which was occasioned by electricity, a necessary agency in the business, and his death resulted. To the rational mind, the whole facts and circumstances considered, it is apparent that the accident grew out of and bears a causal relation to the natural hazards of the business. * * *"

The court further observed: "The evidence in this case wholly fails to show that Hollenbach was responsible for the wire being attached to the light socket, or that he knew of its connection. * * *" Compensation was awarded in that case. 13 A.L.R. pp. 536, 537.

In Glenn et al. v. Reynolds Spring Co. et al., 225 Mich. 693, 196 N.W. 617, 618, 36 A.L.R. 1464, the claimants' decedent, Ross Glenn, was employed in the factory "as a sweeper, collecting the refuse and dirt with a wheelbarrow. At the noon hour on January 24, 1923, some of his fellow employees connected the live electric wires with the handles of the wheelbarrow and when Glenn, resuming his work, took hold of the handles he received a shock which caused his death." Ross did not engage in the horseplay and had no knowledge of the fact that the wheelbarrow had been electrified. Compensation was awarded in that case.

In L. P. Cassell et al. v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, we quote the second headnote: "A stage hand in a theater, who, while attending to the duties of his employment, is injured by a pistol kept in the theater for use in connection with plays performed there, and snapped by another employee in horseplay in which the injured employee did not participate, is entitled to compensation under a statute providing compensation for injuries having to do with and originating in the work." 46 A.L.R. 1137.

In Kansas City Fibre Box Co. v. Connell, 8 Cir., 5 F.2d 398, 43 A.L.R. 478, it was stated that: "An injury to one employed on a machine to cut box corners arises out of his employment where his coworker, having distracted his attention from his work by a playful feint to throw away his cap, he, in part, at least, to stop the interference, placed the latter's cap on the machine so that it was cut in the knives, which resulted in a scuffle for possession of his own cap and his getting his hand in the machine." That was a proceeding under the Federal Employers Liability Act and compensation was sustained.

In Socha v. Cudahy Packing Co., 105 Neb. 691, 181 N.W. 706, 13 A.L.R. 513, the workman was killed by the application of an air hose to his posterior after he had resumed his work. He did not participate in the horseplay.

In an annotation to Hollenbach's case, commencing on page 540, 13 A.L.R., and continuing through page 546, will be found a collection of the authorities which are in line with the holding of the former opinion in this case.

In Chapman v. Railway Fuel Co., 212 Ala. 106, 108, 101 So. 879, 880, sustaining the constitutionality of the Workmen's Compensation Act, Code 1940, Tit. 26, § 253 et seq., the title of which was: " 'An act prescribing the liability of an employer to make compensation by way of damages for injuries received by an employee occasioned by an accident arising out of and in the course of his employment and providing for the enforcement of same, modi-

fying common law and statutory remedies, in such cases; establishing an alternative elective schedule of compensation, regulating procedure for the determination of liability and compensation thereunder in certain cases, and prescribing penalties for the violation thereof; and providing for attorneys' fees and for medical and surgical services.'" it was observed: "* * * the general frame of the title suggests the legislative purpose to pass a comprehensive enactment covering the whole subject of the employer's liability to his employee on account of accident arising out of the employment, and to this general subject the denial of the right of action under section 3912 of the Code of 1907, section 7600 of the Code of 1923, where the parties have been brought within the field of operation covered by the Workmen's Compensation Act, is manifestly germane and cognate. As for sections 2484–2486 of the Code of 1907 (sections 5694–5696, of the Code of 1923), they are affected by the Compensation Act to the extent only, if at all, they apply to cases arising between employer and employee." Stated in other words, the scope and purpose of the act was to cover the liabilities arising out of the relation of master and servant under the common law, the employers' liability act, and the homicide act.

Prior to the enactment of the Workmen's Compensation Act it had been settled that the employer was not liable for the acts of employes, while off duty, resulting from horseplay or fooling. Kirby v. Louisville & N. R. Co., 187 Ala. 443, 65 So. 358. See Payne, Director General of Railroads v. Industrial Commission et al., 295 Ill. 388, 129 N.E. 122, 13 A.L.R. 518.

The application for rehearing is without merit.

Overruled.

All the Justices concur.