186 So.2d 144

Madeline McKNIGHT

v.

CONSOLIDATED CONCRETE COMPANY, Inc.

6 Div. 121.

Supreme Court of Alabama.

April 28, 1966.

London, Yancey, Clark & Allen, Birmingham, for appellee.

Corretti & Newsom, Birmingham, for appellant.

432

LAWSON, Justice.

This is a Workmen's Compensation case.

Certiorari was granted on petition of Madeline McKnight to review a judgment of the Circuit Court of Jefferson County denying compensation for the death of her husband, Neal McKnight, in an action brought by her on behalf of herself and her minor child against Consolidated Concrete Company, Inc., a corporation, under the Alabama Workmen's Compensation Law. § 297, Title 26, Code 1940.

The trial court found, among other things, that Madeline McKnight was the wife of Neal McKnight and that they had one child, Darol Dwang McKnight, a minor; that Neal McKnight was accidentally injured on April 4, 1963, while an employee of Consolidated Concrete Company, Inc., a corporation, sometimes hereinafter referred to as the defendant, and died as a result of the injury; that Neal McKnight was injured on the premises of his employer at a general location where he ordinarily and usually performed his duties and during his regular hours of work; that the defendant had immediate notice of the accidental injury suffered by Neal McKnight and both the defendant and Neal McKnight were subject to the workmen's compensation laws of this state.

As to the general nature of the business of the defendant, the trial court found:

" * * * Among other things, this defendant mixes and sends out to various work jobs concrete and sand or concrete and stone and materials of that sort. It uses in this work at its place here in Birmingham a crane which picks up the sand or other materials from the surface of the ground and hoists them up in the air and drops them into the apparatus which in due turn measures them and puts them in the truck to take them away to the job where they are to be used. * * *"

In regard to the place where the deceased was to perform his duties, the trial court found:

" * * * The deceased, Neal McKnight, in his work for this defendant was employed at the place where this crane was in operation and did various and sundry jobs for the defendant about this work place. * * *"

As to the circumstances leading up to the accident, the trial court found:

"On the date of April 4, 1963, for reasons that are not entirely clear, but probably merely as a means of having some fun or enjoying himself or something of the sort, at any rate, the evidence itself shows no business reason or work reason for doing so, Neal McKnight was discovered by the operator of the crane to be upon the bucket at the end of the line which was then filled with sand and was about to be raised up for a considerable distance in the air to be dumped into the building and apparatus where it was to be measured and used. * * * The pictures of the machine while in operation and the height to which it was hoisting the same and so forth indicates that this was a pretty considerable height and that the bucket which McKnight was riding on is carried at the end of cables which work on pulleys at the upper end of the crane. * * * On the present occasion the operator had hoisted the bucket to a position over the sand pile and had filled it with sand. As he started closing the bucket so as to enclose the sand and moving the bucket gradually upward a bit the operator noticed McKnight was holding to a portion of the bucket and had his feet established upon it and was riding it. He says that his best memory is that he shouted to him or called to him in a loud voice but that there was so much noise about the premises that McKnight probably didn't hear him. He waited momentarily and McKnight remained upon it and thereupon he moved

the dipper upward and to one side and stopped it once again over a pile of chert or rock at a distance perhaps three feet above the bed of rock or chert. But once again McKnight remained on the dipper. Thereupon, the operator hoisted it in the air to the place where it was to be used in depositing the sand in the bin and he proceeded to open the bucket and loose the sand and let it go into the bin and then to close it. At that time the bucket was in such position that McKnight was on the opposite side from the operator and the operator could not see him. He then moved the bucket out again and he stated in his testimony that at that time McKnight's hands and feet were loose, that is, were not either holding to or standing upon any part of the bucket and that his head was apparently caught in the portion of the bucket where it opens and then closes. Rather than bring him down to the earth, which would have been farther, he brought him over the slag or stone pile again and opened the doors of the bucket and let him fall out. McKnight was severely injured, suffering a fractured neck and depressed skull fracture and died on the same date.

*   *   *   *   *   *

"There is no testimony at all from any person as to the mechanics or specific facts whereby McKnight got his head caught in the bucket."

In regard to the condition of the crane shortly before the accident, the trial court found:

"* * * Right shortly before then some work had been done on this crane by the operator whose name was J. R. Hullett and he had been assisted by McKnight and possibly one other person. The difficulty with the machine was that the clutch was out of order. The clutch of course is located on the power part of the machine and undoubtedly near the operator. * * *"

Relative to the defendant's rule concerning the use of its machinery by its employees and in regard to McKnight's previous conduct, the trial court found:

"* * * At the time the defendant had in effect a rule that employees were not to play with the machinery. However, it appears that on several occasions prior to this particular one McKnight had ridden upon this bucket, called by some of the witnesses a clam bucket. This riding had been done only for a short distance and while the bucket was near the ground, and, upon the bucket's being stopped, he had gotten off * * *."

As to Hullett's job with the defendant, the trial court found:

"There is some testimony here that the man on the defendant's premises who was generally in charge there was Nash. At the time of the injury to and death of McKnight, Nash was not on the premises. There is further testimony that if Nash were absent other employees on the premises from time to time when they had some doubt about an item or needed some information about what to do and how to do it would feel free to call upon J. R. Hullett who was the operator of this machine at the time McKnight was injured, and the testimony indicates that Hullett on such occasions responded by answering an inquiry or a question or attempting to assist in whatever might be presented to him. There is no testimony that he was an assistant foreman or assistant manager, but there is testimony indicating that, by common consent, he was apparently called upon when the manager Nash was absent. Hullett's job on the premises appears to have been the operation of the hoisting crane upon the bucket of which McKnight was riding at the time of his injury and death."

In its "Statement of the Facts" the trial court included the following:

"As the court understands it, the defendant does not plead as a defense any willful violation of a rule, but it takes the position that the accident did not

arise out of and in the course of the employment; that the accident arose out of an occurrence which happened as McKnight turned aside from and deviated from the duties and work of the employment. This appears to be substantially the only question in the case."

The trial court's "Statement of the Facts" concludes as follows:

"As a further finding of fact, considering all the facts and circumstances herein shown, the Court cannot find and does not find that the accident to McKnight and his death arose in the course of his performing any duty of his employment. The said occurrence happened during those hours when he was due to be employed and he was at the time on the premises of the employer. There is no reasonable relationship in the Court's opinion and as gauged by the facts in the case between his employment and the occurrence of the accident. The Court further finds expressly that the evidence would tend strongly to indicate that the hazard which occasioned the accident and caused the death was one which McKnight, for reasons of sport or play, appears to have assumed."

The trial court's "Statement of the Facts" is followed by its "Final Judgment," which reads:

"The Statement of Facts hereinabove shown has indicated already the Court's final conclusion and the judgment which the Court will render. There has been a failure, through no fault of counsel, but through and by reason of circumstances of the occurrence, to show that the accident arose out of or was causally related to the duties that McKnight had under the employment. On the contrary, it appears to be an accident that occurred during the course of and by reason of a diversion which McKnight allowed himself on the occasion in question. Accordingly the Court herewith renders judgment in favor of the defendant."

The appellant apparently construes the last paragraph of the "Statement of the Facts" and the "Final Judgment" as showing that the trial court denied compensation because the accidental injury which resulted in McKnight's death did not arise out of and in the course of his employment. We quote from appellant's brief: "Compensation was denied in this case on the premises that the accidental injury and death of the deceased employee, Neal McKnight, did not arise out of and in the course of his employment."

On certiorari to review judgments in compensation cases, we are not concerned with the weight of the evidence as to any fact found by the trial court. If there is any reasonable view of the evidence that will support the trial court's finding of fact, it will not be disturbed. Campbell v. United States Steel Corp., 274 Ala. 326, 148 So.2d 484; Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666.

We do not understand counsel for appellant to contend that the trial court's finding of facts is not supported by the evidence. It is the application of the law to the facts of which appellant complains.

In order for an accident to be compensable under the Workmen's Compensation Law of this state, the accident must arise out of and in the course of employment. § 253, Title 26, Code 1940; Deaton Truck Line, Inc. v. Acker, 261 Ala. 468, 74 So.2d 717. See Southern Cotton Oil Co. v. Bruce, supra, for a discussion of those terms.

In appellant's brief it is conceded "that at the time of the accidental injury of Neal McKnight, he was not performing an act that was in direct furtherance of his employer's interest." Appellant says that at the time of his injury Neal McKnight was engaged in a so-called act of "horseplay" but contends that, nevertheless, his accidental injury and death is compensable.

In early compensation law, aggressor and victim alike were denied compensation

in horseplay cases. But it seems to be the rule now in practically all jurisdictions that a non-participating victim of horseplay may recover compensation. 1 Larson, Workmen's Compensation Law, § 23.10. But as to the claim where the injury resulted from the employee's own horseplay, the courts are not in accord and the decisions cannot be reconciled. See 1 Larson, Workmen's Compensation Law, §§ 23.10–23.65.

Our research indicates that we have only one so-called horseplay case. In Stockham Pipe Fittings Co. v. Williams, 245 Ala. 570, 18 So.2d 93, the claimant was injured when hit by a piece of soap thrown by a fellow employee in course of horseplay started by claimant. The trial court awarded compensation. We reversed, saying in part:

"Pretermitting the question of whether Williams' [claimant's] coemployee Culbreath intended to injure him because of Williams' joking and horseplay, we are clear to the conclusion from the undisputed evidence that Williams' injury and death did not arise out of his employment. Appellee's [claimant's] counsel concede that the earlier cases interpreting the Workmen's Compensation Act hold generally, 'that compensation is not recoverable for injuries suffered from horseplay or fooling, which was done independently and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the act.'

"But appellee contends that the modern decisions have extended this rule, or what is to the same effect, have established an exception thereto that, when an injury or death is caused by horseplay not instigated or participated in by the injured workman who was at the time of the injury performing the duties of his employment, such injury is compensable. Appellee further contends that when it is shown that the injury was proximately caused by *'horseplay commonly carried on by the employees, with the knowledge or consent of the employer, so as to constitute a condition or incident to the employment'* such injury is compensable.

"Manifestly the appellee's case is not within the first category last above stated. Williams instigated and participated in the horseplay and thereby brought about his injury.

"Nor are we of opinion there was any evidence that supported the conclusion that such horseplay was commonly carried on by the employees of the defendant with its knowledge or consent *so as to constitute a condition or incident to the employment*. Otherwise stated, 'Upon consideration of all the circumstances, a causal connection between the conditions under which the work *is required to be performed and the resulting injury'* is not shown. In re McNicol et al., 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306.

\* \* \* \* \* \*

"Under the modern authorities, injury resulting from horseplay to be compensable, such horseplay must not be instigated by the injured workman and he must at the time be engaged in the duties of his employment. Barden et al. v. Archer Daniels Midland Co., supra [187 Minn. 600, 246 N.W.2d 254]; McKenzie v. Railway Exp. Agency, Inc., 205 Minn. 231, 285 N.W. 529, 530; Socha v. Cudahy Packing Co., 1921, 105 Neb. 691, 181 N.W. 706, 13 A.L.R. 513." (245 Ala. 572–573, 18 So.2d 94–95)

It appears that the principal reason for our holding in the Williams Case, supra, was that Williams was the instigator of or a participant in the horseplay which resulted in his death. In other words, we applied the so-called "aggressor defense" rule, without using that term. We agree with Larson that the term "aggressor defense" is unsatisfactory, in that horseplay does not necessarily take the form of sportive assault in that often it is purely a solo performance, and sometimes even if a coemployee is involved, the conduct is "so kittenish and trivial as to deserve a much

436

less somber designation than 'aggression,' which is a term borrowed from the lexicon of malicious assault." 1 Larson, Workmen's Compensation Law, § 23.30. In the section of his work just cited Larson suggests the use of the term "instigator" or "participant" in preference to "aggressor." As indicated, those were the terms we used in Williams, supra. But the matter of semantics aside, the rule is the same in those jurisdictions where the "aggressor defense" is applied, that is, an employee who instigates or participates in horseplay is not entitled to compensation for an injury growing out of the horseplay.

But in Williams, supra, without so denominating it, we took cognizance of what is sometimes referred to as the "New York rule," which seems to be that even an instigator or participant is entitled to compensation if the horseplay was a regular incident of the employment, of which the employer had actual or constructive notice, as distinguished from an isolated act. 1 Larson, Workmen's Compensation Law, §§ 23.-20, 23.40 and 23.42.

The evidence shows beyond peradventure and the trial court found, in effect, that Neal McKnight was a participant in the horseplay which caused his injury and death. Hence, if we adhere strictly to the "aggressor defense" rule the judgment of the trial court must be affirmed.

In our opinion, the same result must be reached under the so-called "New York rule." The trial court did find that on previous occasions "McKnight had ridden upon this bucket, called by some of the witnesses a clam bucket. This riding had been done only for a short distance and while the bucket was near the ground, and, upon the bucket's being stopped, he had gotten off." But the trial court did not find and the evidence would not support a finding that McKnight had ever previously ridden on the bucket in the manner he was doing at the time of his injury. Such conduct certainly had not become a regular incident of the employment of which the defendant had actual or constructive notice. The trial court did not find and the evidence would not support a finding that the defendant employer had actual knowledge of Neal McKnight's previous actions in riding the bucket. The evidence would not support a finding, and we do not understand that the trial court found, that Hullett, the operator of the crane, was a supervisory employee of the kind which would impute his knowledge of Neal McKnight's previous conduct to the employer. Nor can it be said that the act of horseplay which resulted in Neal McKnight's injury and death was so characteristic a feature of his employment that even the first time it happened it would be considered a part of the employment. See 1 Larson, Workmen's Compensation Laws, § 23.42.

All other questions aside, we feel that Neal McKnight deliberately and substantially stepped outside his employment in getting upon the bucket and remaining thereon to the point where he was injured. This conduct was, indeed, a substantial deviation from his employment. See 1 Larson, Workmen's Compensation Law, § 23.64.

We have read with care the cases cited by counsel for appellant from other jurisdictions and realize if we were to follow some of them we would come to a different conclusion. But we are unwilling to follow those cases, as they are not in accord with our holdings in Stockham Pipe Fittings Co. v. Williams, supra.

We affirm the judgment of the trial court.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.