On Application for Rehearing
The opinion of April 21, 2000, is withdrawn, and the following is substituted therefor. *Page 787 
On December 18, 1996, Brenda Delle Gilbert ("Gilbert") sued her employer, Tyson Foods, Inc. ("Tyson"), seeking workers' compensation benefits for an injury she suffered while she was employed by Tyson. Gilbert alleged in her complaint that in November 1996, during her shift at the Tyson facility where she worked, she was hit in her back by a coemployee and suffered injuries as a result of that incident. On September 10, 1998, the trial court held a hearing, at which it heard ore tenus evidence. On September 15, 1999, the court entered a judgment in favor of Tyson, finding that Gilbert was voluntarily engaged in horseplay with the coemployee at the time she was injured, and that, therefore, she was not entitled to workers' compensation for her injury. Gilbert appeals.
Gilbert argues that the trial court erred in denying her compensation benefits because, she says, she was not engaging in horseplay when she was injured. Section 25-5-51 states, in part, that "no compensation shall be allowed for an injury . . . caused by the willful misconduct of the employee. . . ." § 25-5-51, Ala. Code 1975.
Gilbert had been employed by Tyson since March 1996. In November 1996, at the time of her injury, she was employed in the deboning section of the Tyson facility. Gilver Valasquez[1] was a coemployee who worked in the same section with Gilbert. Gilbert testified that since the beginning of her employment with Tyson, Valasquez "was all the time hitting [her] with his fist and pinching [her] and pushing [her] around." Gilbert further testified that Valasquez frequently came up behind her and grabbed her buttocks and that on one occasion he had hit her in the breast with his fist. Gilbert testified that this conduct by Valasquez occurred every day "except for the days he was not there or I was not there."
The record reflects that on November 11, 1996, Valasquez walked by Gilbert and struck her on the arm. Gilbert then hit Valasquez and turned around and continued working with her back to Valasquez. Valasquez approached Gilbert from behind and hit her on her back between her shoulder blades. Gilbert turned around and told Valasquez she was going to "kill him." Valasquez ran away. Gilbert testified that she told Mike Speagle, the company nurse, that same day, that Valasquez had struck her. Gilbert claims that as a result of Valasquez's striking her, she ultimately underwent surgery for a cervical discectomy and the fusion of a ruptured disk in her neck.
Carolyn Cox, a supervisor in the deboning section of the facility, investigated Gilbert's report that Valasquez had struck and injured her. Cox's report from her investigation states, in part:
 "In her medical file it shows that she had gone to the nurse complained that Gilver had hit her in the chest on 11/6/96 but we didn't know about that until I checked tonight. She went in on 11/8 complained about her back had the nurse rub something on it. She didn't tell us about that either. On 11/12 the nurse told me about Brenda saying she had been hurt by Gilver was complaining about her shoulder arm 
hand. She only told us then because we confronted her.
 "Brenda Gilver were always kidding playing around. He helped her get caught up on her job only when Brenda was not in the mood did she get angry. When he was hitting on her she hit him back. Everyone around them *Page 788 
agreed that they were hitting on each other but no one noticed that it was as bad as Brenda is trying to say."
Cox wrote another report from her investigation. That report states:
 "Brenda grades wings on lines 1-4 in debone. On 11-11-96 while Brenda was grading, Gilver Velazquez [sic] came by punched her on the right arm. Brenda then punched him back on his arm. Gilver then hit Brenda on her right shoulder blade area with his fist. Gilver laughed when Brenda said `I'm going to kill you' he took off running around the front of the lines to the line-one area. John Waldon yelled to Brenda to go get him Brenda said `I'm not leaving the line.' Gilver came back around to where he was picking up wings as he did he grabbed [himself] in the crotch area of his body and made an obscene gesture. Brenda says he makes these gestures all the time.
 "Brenda says that he came by her about a week ago and hit her in the upper right chest left a bruise. She did not report it.
 "Brenda did not report the problem on 11-11-96 to her supervisor.[2] She felt nothing had been done before with Barbara McComb. Something was done before. Gilver was given a serious counseling statement a warning that upon reoccurrence there would be a lay off 
possible termination."
As a result of the investigation conducted by Cox and another supervisor, Joan Bennett, Cox determined that Gilbert's injury was a result of horseplay between Valasquez and Gilbert. Cox testified:
 "Q. As I understand it, when the investigation was finished, your conclusion was that Mr. [Valasquez] and Ms. Gilbert had been involved in horseplay. Is that right?
"A. Yes, sir.
"Q. And that horseplay had been started by whom?
 "A. At the time, I guess whoever struck or whatever. I don't know if there had been any discussion or kidding around. I can't remember that."
Cox's reports and Gilbert's testimony indicate that there was a pattern and practice of hitting, punching, and slapping conduct between Gilbert and Valasquez. We are unable to determine from the record how much of this conduct was playful horseplay and how much was unwanted harassment. Cox interviewed Valasquez after the incident. Cox testified:
 "Q. Are you saying Gilver [Valasquez] admitted that he was horseplaying?
 "A. I don't think he admitted to horseplay. I doubt if he even understands the word.
"Q. That is my point exactly. What did he say?
 "A. That they was just — you know, kidding and playing around. And I think as I said in there, when somebody else said,`Go get him, Brenda,' and `no, I'm not going to lose my job.' It was this sort of thing. It was a general atmosphere of `I'm not in the mood for this. Leave me alone tonight.'
 "Q. Where in those statements is that kind of information? If you could just point it out. *Page 789 
"A. Oh, I doubt if I wrote it in there."
In describing how she was injured by Valasquez, Gilbert testified:
 "A. He walked by and hit me on the arm and I hit him back. He come up from behind me and hit me in the back.
 "Q. In the times that he had hit you or touched you prior to this particular night, had you ever struck him back before?
"A. No.
 "Q. On this particular occasion, why did you choose to hit him back then?
"A. Because I was tired of him hitting me.
 "Q. You say after you hit him back, Mr. [Valasquez] came up behind you and hit you again?
"A. Yes.
"Q. Did he give you any warning of that before he hit you?
"A. No. I had my back to him.
 "Q. Had you had any kind of argument or any kind of dispute with him that night?
 "A. No. I told him to leave me alone, that I didn't feel good. He hit me and I hit him back.
 "Q. At the time he hit you and you hit back, and then he hit you back, you had no prior arguments of any kind with him?
"A. No.
"Q. Had you had any conversations?
"A. No.
"Q. He just came up and hit you for no reason?
"A. Right.
 "Q. That pattern of him just coming up and hitting you for apparently no reason, had that happened before in these other incidents we discussed?
"A. Yeah, he had hit me before.
"Q. Had he done so without any warning before?
"A. It was always without warning."
In workers' compensation cases, our standard of review is governed by § 25-5-81(e), Ala. Code 1975. Our review of legal issues carries no presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975, see also Gulf States Steel, Inc. v. White, 742 So.2d 1264
(Ala.Civ.App. 1999). Because the facts of this case are undisputed, the ore tenus standard does not apply, and the trial court's judgment carries no presumption of correctness. Beavers v.County of Walker, 645 So.2d 1365, 1372 (Ala. 1994). Therefore, our review is de novo. Id. at 1373; see also Gulf States Steel, 742 So.2d at 1266.
In cases where willful misconduct is alleged under § 25-5-51, Ala. Code 1975, we have consistently held that "an employee whoinstigates or participates in horseplay, from which an injury occurs, is not entitled to compensation for the injury." Walden v.Glaze Son, 616 So.2d 357, 358 (Ala.Civ.App. 1992) (emphasis in original).
In 1966, our supreme court addressed the issue of compensation for a victim of, or nonparticipant in, horseplay. In McKnight v.Consolidated Concrete Co., 279 Ala. 430, 186 So.2d 144 (1966), the court stated that "it seems to be the rule now in practically all jurisdictions that a non-participating victim of horseplay may recover compensation." McKnight, 279 Ala. at 435,186 So.2d at 148 (citing 1 Larson, Workmen's Compensation Law, § 23.10), seealso Stockham Pipe Fittings Co. v. Williams, 245 Ala. 570,18 So.2d 93 (1943).
In Stockham Pipe Fittings, Williams entered the bathhouse and locker room after his work shift and proceeded to instigate horseplay with another employee. The other employee retaliated; this retaliation ultimately led to an injury that caused *Page 790 
Williams's death the following day. In denying compensation benefits to Williams's family, the court noted: "No one else engaged in this `horseplay' and Williams was the aggressor." The court further found that Williams's death did not arise out of his employment. The court stated, "Under the modern authorities, [for an] injury resulting from horseplay to be compensable, such horseplay must not be instigated by the injured workman and he must at the time be engaged in the duties of his employment."Stockham Pipe Fittings, 245 Ala. at 573, 18 So.2d at 95.
The court in McKnight ultimately upheld the trial court's judgment denying compensation for the death of the employee because the evidence supported the finding that the employee was a participant in the horseplay that led to his injury and ultimately to his death. In distinguishing an instigator or participant in the horseplay from an employee who is the victim of horseplay, the court discussed its holding in Stockham Pipe Fittings Co. v.Williams, stating:
 "It appears that the principal reason for our holding in [the Williams case], supra, was that Williams was the instigator of or a participant in the horseplay which resulted in his death. In other words, we applied the so-called `aggressor defense' rule, without using that term. We agree with Larson that the term `aggressor defense' is unsatisfactory, in that horseplay does not necessarily take the form of sportive assault in that often it is purely a solo performance, and sometimes even if a coemployee is involved, the conduct is `so kittenish and trivial as to deserve a much less somber designation than "aggression," which is a term borrowed from the lexicon of malicious assault.'"
McKnight, 279 Ala. at 435-36, 186 So.2d at 149 (citing 1 Larson,Workmen's Compensation Law, § 23.30).
It is undisputed that Gilbert was engaged in a duty related to her employment at the time she suffered her injury. Thus, the dispositive issue becomes whether Gilbert instigated the horseplay that led to her injury. Our review of the record reflects that Valasquez, not Gilbert, was the sole instigator of any horseplay that may have taken place between them on the date of the incident. We recognize that the record contains evidence that would support a finding that Gilbert and Valasquez both had probably engaged in horseplay on occasions before November 11, 1996. However, we find in the record no substantial evidence that would support a finding that Gilbert was voluntarily engaged in horseplay with Valasquez at the time of her injury. Because Valasquez was the sole instigator and his conduct proximately caused Gilbert's injury, we conclude, based upon McKnight andStockham Pipe Fittings, that the trial court erred in entering a judgment in favor of Tyson. Therefore, the judgment of the trial court is reversed and the case is remanded for a determination of the amount of workers' compensation benefits due Gilbert, and for the entry of a judgment consistent with this opinion.
OPINION OF APRIL 21, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED; REVERSED AND REMANDED.
Robertson, P.J., and Yates, Monroe, and Crawley, JJ., concur.
[1] Valasquez is referred to in the transcript as Gilver Valaskaz, Gilver Volaskaz, and Gilver Veleskaz. We will refer to him as Gilver Valasquez for purposes of this opinion.
[2] Cox is referring to herself and Joan Bennett when she states that Gilbert did not report her injury to a "supervisor." It is undisputed that on the day it happened Gilbert reported her injury to the company nurse. The record reflects that company policy considers the company nurse to be an appropriate person to whom to report incidents of harassment and injuries. The record does not contain evidence indicating that a particular supervisor must be notified. *Page 791